YAAKOV M. ROTH
Acting Assistant Attorney General
SARAH L. VUONG
Assistant Director
WILLIAM H. WEILAND
Senior Litigation Counsel
ANNA L. DICHTER
LAUREN BRYANT
JEFFREY HARTMAN
CARLTON F. SHEFFIELD
CATHERINE ROSS
AMANDA B. SAYLOR
ERIC SNYDERMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-2405
Facsimile: (202)-305-7000
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

|  |  |
|---|---|
| CASA INC.,<br><br>    PLAINTIFF,<br><br> V.<br><br>KRISTI NOEM, Secretary of Homeland Security, *et al.*,<br><br>    DEFENDANTS. | Case No. 8:25-cv-1484-TDC |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR STAY OF AGENCY; CROSS MOTION FOR SUMMARY JUDGMENT; AND MOTION TO DISMISS

# TABLE OF CONTENTS

## Contents

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................5

I. Statutory Background ....................................................................................5

II. Factual Background.......................................................................................6

    A.    TPS for Afghanistan .......................................................................6

    B.    TPS for Cameroon .........................................................................8

STANDARDS OF REVIEW .............................................................................8

ARGUMENT .....................................................................................................9

I. THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S ACTION ................9

    A.    The TPS Statute Bars the Relief Plaintiff Seeks. ........................9

    B.    8 U.S.C. § 1252(f)(1) Bars Plaintiff's Claims for Injunctive Relief.........10

II. PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ......12

    A.    The Secretary's TPS Determinations Are Procedurally Sound. .............12

    B.    The Secretary Considered the Appropriate Statutory Factors in Terminating TPS for Afghanistan.........................................................14

III. PLAINTIFF IS NOT ENTITLED TO A STAY OF AGENCY ACTION.................18

    A.    Plaintiff Cannot Establish a Likelihood of Success on the Merits...........18

    B.    Any Harms Plaintiff May Suffer are Inherent in the Temporary Nature of TPS.......................................................................................................18

    C.    The Balance of Equities and Public Interest Weigh Against Injunctive Relief.......................................................................................................20

    D.    Plaintiff's Requested Relief is Overly Broad.........................................22

CONCLUSION.........................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Amgen, Inc. v. Smith,*
   357 F.3d 103 (D.C. Cir. 2004) ................................................................. 10

*Arizona v. United States,*
   567 U.S. 387 (2012) ................................................................................. 22

*Biden v. Texas,*
   597 U.S. 785 (2022) ................................................................................. 11

*Block v. Cmty. Nutrition Inst.,*
   467 U.S. 340 (1984) ................................................................................. 10

*Burnette v. Fahey,*
   687 F.3d 171 (4th Cir. 2012) ....................................................................... 8

*California v. Grace Brethren Church,*
   457 U.S. 393 (1982) ................................................................................. 11

*California v. Texas,*
   593 U.S. 659 (2021) ................................................................................. 22

*Camp v. Pitts,*
   411 U.S. 138 (1973) ................................................................................... 9

*CASA de Maryland, Inc. v. Trump,*
   971 F.3d 220 (4th Cir. 2020) ...................................................................... 22

*CASA, Inc. v. Trump,*
   No. 25-1153, 2025 WL 654902 (4th Cir. Feb. 28, 2025) ........................................... 23

*City of Columbus v. Cochran,*
   523 F. Supp. 3d 731 (D. Md. 2021) ............................................................. 8, 9

*Clay v. Consol. Penn. Coal Co., LLC.,*
   955 F. Supp. 2d 588 (N.D. W.Va. July 3, 2013) ................................................... 8

*Comm. on Judiciary of U.S. House of Representatives v. Miers,*
   542 F.3d 909 (D.C. Cir. 2008) .................................................................... 11

*Dep't of Commerce v. New York,*
   588 U.S. 752 (2019) ................................................................................. 15

*Di Biase v. SPX Corp.,*
   872 F.3d 224 (4th Cir. 2017) ....................................................... 9, 18, 19, 20

*Galvez v. Jaddou,*
  52 F.4th 821 (9th Cir. 2022) ............................................................................. 12

*Garland v. Aleman Gonzalez,*
  596 U.S. 543 (2022) ......................................................................................... 11

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018) ...................................................................................... 22

*Hollingsworth v. Perry,*
  558 U.S. 183 (2010) ................................................................................... 1, 20

*Lee v. USCIS,*
  592 F.3d 612 (4th Cir. 2010) ............................................................................ 10

*Lewis v. Casey,*
  518 U.S. 343 (1996) .......................................................................................... 22

*Lin v. Heffron,* No. 3:21-cv-647-MOC-D,
  CK, 2022 WL 820937 (W.D.N.C. Mar. 17, 2022) ........................................... 10

*Lincoln v. Vigil,*
  508 U.S. 182 (1993) ............................................................................................ 9

*Marx v. Gen. Revenue Corp.,*
  568 U.S. 371 (2013) .......................................................................................... 10

*Miranda v. Garland,*
  34 F.4th 338 (4th Cir. 2022) ....................................................................... 20, 21

*Moore v. Frazier,*
  941 F.3d 717 (4th Cir. 2019) ............................................................................ 10

*National TPS Alliance,*
  --- F.Supp.3d ----, 2025 WL 957677 (N.D. Cal. Mar. 31, 2025) ................. 1, 10

*New York,*
  140 S. Ct. 599 (2020) ........................................................................................ 23

*Nken v. Holder,*
  556 U.S. 418 (2009) .......................................................................................... 21

*Noem v. Doe,* No. 24A1079,
  605 U.S. __ (May 30, 2025) ............................................................................. 21

*Poursina v. USCIS,*
  936 F.3d 868 (9th Cir. 2019) ..................................................................... 14, 17

*Ramos v. Wolf*,
   975 F.3d 872 (9th Cir. 2020) ............................................................... 12, 15, 23

*Rusu v. INS*,
   296 F.3d 316 (4th Cir. 2002) ................................................................................ 22

*Sampson v. Murray*,
   415 U.S. 61 (1974) ................................................................................ 9, 14, 18, 19

*Sanchez v. Mayorkas*,
   593 U.S. 409 (2021) ................................................................................................. 6

*Students for Fair Admissions v. U.S. Naval Acad.*,
   707 F. Supp. 3d 486 (D. Md. Dec. 20, 2023) ....................................................... 20

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ............................................................................................. 14

*United States v. Hasson*,
   26 F.4th 610 (4th Cir. 2022) ................................................................................ 10

*United States v. Mendoza*,
   464 U.S. 154 (1984) ............................................................................................. 23

*United States v. Texas*,
   599 U.S. 670 (2023) ............................................................................................. 23

*Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n*,
   263 F.3d 379 (4th Cir. 2001) ............................................................................ 5, 23

*Webster v. Doe*,
   486 U.S. 592 (1988) ............................................................................................... 9

*Winter v. NRDC*,
   555 U.S. 7 (2008) .......................................................................................... passim

*Zhu v. Gonzales*,
   411 F.3d 292 (D.C. Cir. 2005) ............................................................................... 9

## <u>Statutes</u>

5 U.S.C. § 701(a)(1) ................................................................................................. 10

5 U.S.C. § 705 ........................................................................................... 3, 9, 11, 18

6 U.S.C. § 202 ........................................................................................................... 10

6 U.S.C. § 557 ............................................................................................................. 5

8 U.S.C. § 1103 ............................................................................................................. 5

8 U.S.C. § 1226(a) ....................................................................................................... 21

8 U.S.C. § 1252(f) ..................................................................................................... 3, 12

8 U.S.C. § 1252(f)(1) ............................................................................................ passim

8 U.S.C. § 1254a ................................................................................................ 3, 14, 18

8 U.S.C. § 1254a(a) ....................................................................................................... 6

8 U.S.C. § 1254a(b) ..................................................................................................... 19

8 U.S.C. § 1254a(b)(1) .............................................................................................. 1, 6

8 U.S.C. § 1254a(b)(1)(A) .......................................................................................... 16

8 U.S.C. § 1254a(b)(1)(C) ..................................................................................... 16, 17

8 U.S.C. § 1254a(b)(2) .................................................................................................. 6

8 U.S.C. § 1254a(b)(2)(B) .......................................................................................... 19

8 U.S.C. § 1254a(b)(3)(A) ..................................................................................... 13, 14

8 U.S.C. § 1254a(b)(3)(B) ....................................................................................... 1, 13

8 U.S.C. § 1254a(b)(5)(A) ..................................................................................... 2, 3, 9

8 U.S.C. §§ 1103(a) .................................................................................................... 10

Pub. L. No. 101-649 ....................................................................................................... 5

U.S.C. § 1254a(b)(1)(C) ....................................................................................... 14, 17

U.S.C. § 1254a(b)(3)(A) .............................................................................................. 13

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 8

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1

Fed. R. Civ. P. 56(a) ...................................................................................................... 8

## <u>Other Authorities</u>

*Designation of Afghanistan for Temporary Protected Status*,
    87 Fed. Reg. 30,976 (May 20, 2022)…………..…………………………………………...……7, 16

*Designation of Cameroon for Temporary Protected Status*,
    87 Fed. Reg. 34,706 (June 7, 2022)…………………………………………………………….8

*Termination of Designation of Lebanon Under Temporary Protected Status Program*,
    58 Fed. Reg. 7582 (Feb. 8, 1993) ...........................................................................................  2

*Termination of the Designation of Montserrat Under the Temporary Protected Status Program*,
    69 Fed. Reg. 40,642 (July 6, 2004)...........................................................................................  2

*Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before
    Termination of Guinea's Designation for Temporary Protected Status,* 81 Fed. Reg. 66,064
    (Sept. 26, 2016)...........................................................................................................................  2

*Extension and Redesignation of Afghanistan for Temporary Protected Status*,
    88 Fed. Reg. 65,728, 65,728 (Sep. 25, 2023) .....................................................  7, 8, 16

*Extension and Redesignation of Cameroon for Temporary Protected Status*,
    88 Fed. Reg. 69,945 (Oct. 10, 2023)..........................................................................  8, 13

*Termination of the Designation of Afghanistan for Temporary Protected Status*,
    90 Fed. Reg. 20,309, 20,309 (May 13, 2025) ..........................................  7, 13, 15, 16

*Protecting the American People Against Invasion*,
    Exec. Order No. 14159, § 1, 90 Fed. Reg. at 8,443……………………………………………...21

## INTRODUCTION

Defendants, Kristi Noem, in her official capacity as Secretary of Homeland Security, and the U.S. Department of Homeland Security, submit this Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment or Stay of Agency Action, ECF No. 42, and in support of Defendants' Motion for Partial Summary Judgment and Motion to Dismiss.[1]

In *Noem v. National TPS Alliance*, No. 24A1059 (S. Ct. May 19, 2025) ("*NTPSA*"), an 8-1 majority of the Supreme Court granted the government's application for a stay of a district court order in a similar lawsuit, *National TPS Alliance*, --- F.Supp.3d ----, 2025 WL 957677, at *47 (N.D. Cal. Mar. 31, 2025). In reaching that conclusion, the Supreme Court necessarily concluded that the government would likely prevail on its arguments, including its argument that courts lack jurisdiction to review the Secretary's TPS determinations. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). The Court also necessarily concluded that the balance of equities and the public interest favor the government. *See id.* Those conclusions control here, and the Court should deny plaintiff's motion and instead enter judgment in favor of the government.

TPS is a humanitarian program that affords temporary relief from removal to certain aliens who are in the United States when their country of nationality experiences armed conflict, natural disaster, or other extraordinary and temporary conditions and who are thus temporarily unable to return home safely. 8 U.S.C. § 1254a(b)(1). The TPS statute vests the Secretary with broad discretion over TPS designations, and when the Secretary determines that a country no longer meets the conditions for designation, the statute requires her to terminate it, 8 U.S.C. §

---

[1] As discussed at the May 27, 2025 status conference, ECF No. 49, Defendants preserve the right to file a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) related to the merits of Plaintiff's equal protection claims should the instant briefing not otherwise resolve this matter in Defendants' favor.

1254a(b)(3)(B), as Secretaries have periodically done across administrations.[2] To protect the Secretary's wide discretion in this fast-moving area of foreign affairs, Congress shielded those determinations from judicial review with a jurisdictional bar of exceptional clarity and scope: "*There is no judicial review of any determination of the [Secretary]* with respect to the designation, or termination or extension of a designation, of a foreign state." 8 U.S.C. § 1254a(b)(5)(A) (emphasis added).

Temporary protected status (TPS) designations for two countries—Afghanistan and Cameroon—are at issue here.

On March 21, 2025, Secretary of Homeland Security Kristi Noem determined that Afghanistan's Temporary Protected Status (TPS) designation should be terminated. Ex. 9, J.R. 83.[3] That termination was published in the Federal Register on May 13, 2025, effective 60 days later on July 14, 2025.

Notwithstanding the Secretary's clear authority and Congress's decision to commit her determination to her discretion alone, Plaintiff, CASA, Inc.—a non-profit membership-based organization—brings this suit challenging the Secretary's TPS determinations for Afghanistan and Cameroon under the Administrative Procedure Act, Declaratory Judgment Act, and the Due Process Clause of the Fifth Amendment. ECF No. 41 ("FAC"). Plaintiff challenges the Secretary's

---

[2] See, *e.g.*, *Termination of Designation of Lebanon Under Temporary Protected Status Program*, 58 Fed. Reg. 7582 (Feb. 8, 1993); *Termination of the Designation of Montserrat Under the Temporary Protected Status Program*, 69 Fed. Reg. 40,642 (July 6, 2004); *Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Guinea's Designation for Temporary Protected Status*, 81 Fed. Reg. 66,064 (Sept. 26, 2016).

[3] Pursuant to this Court's order, ECF No. 49, Defendants are including with this submission a redacted copy of the final decision document for the termination determination for Afghanistan. This will also be included with the Joint Record documents required by ECF No. 10, Part II.B.2. Defendants are diligently working towards production of the administrative record and intend to include it in their portion of the Joint Record.

May 13, 2025 termination of TPS for Afghanistan as procedurally improper and asks the Court to extend TPS for Afghanistan for a minimum of six months. ECF No. 42, 1. In the alternative, Plaintiff seeks to stay the effective date of Secretary Noem's decision. *Id.*

Plaintiff also challenges the Secretary's yet unpublished determination as to TPS for Cameroon as procedurally improper and asks this court to declare that TPS be automatically extended for at least six months, ECF No. 42, 1, notwithstanding the fact that TPS remains in effect under the 2023 redesignation and extension until June 7, 2025.

The Court should reject Plaintiff's extraordinary requests. Here, as the Supreme Court's decision in *NTPSA* indicates, summary judgment in favor of Defendants or dismissal of this action in its entirety is appropriate because this Court lacks jurisdiction over all of Plaintiff's claims. The TPS statute broadly prohibits judicial review of "any determination of the Secretary with respect to" designations, terminations, or extensions. 8 U.S.C. § 1254a(b)(5)(A). Each of the Secretary's decisions is a "determination" relating to an "extension" or "termination" of a designation under 8 U.S.C. § 1254a. *Id.* Plaintiff's claims, like the claims in *NTPSA*, challenge the basis of and procedure for Secretary Noem's termination decisions for both Cameroon and Afghanistan, and seek to set those determinations aside. Just as in *NTPSA*, those arguments fall squarely within the statute's bar on judicial review.

This Court also lacks jurisdiction to issue the preliminary relief Plaintiff seeks. Plaintiff styles its request as a motion to stay agency action under 5 U.S.C. § 705, but 8 U.S.C. § 1252(f) prohibits any court, "other than the Supreme Court," from exercising "jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter … other than with respect to the application of such provisions to an individual alien against whom proceedings … have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added). Section 1254a is a covered

provision, and a stay enjoining or restraining the Secretary's decision from having any legal effect would enjoin or restrain the operation of section 1254a—just the sort of coercive order Section 1252(f)(1) prohibits.

Even if the Court were to reach the merits, Plaintiff has failed to demonstrate that it is entitled to judgment as a matter of law. The Secretary's TPS determinations do not run afoul of the TPS statute, and each determination comports with the procedural requirements on timing and notice. As the Federal Register Notice clearly demonstrates, the Secretary considered statutorily authorized factors in reaching the conclusion that termination of TPS for Afghanistan is appropriate. And Plaintiff can point to nothing to establish that a determination related to Cameroon, which has not yet been published, was improper.

As to Plaintiff's request for a stay in the alternative, Plaintiff cannot satisfy the standards set forth in *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Here, too, Plaintiff's APA claims are unlikely to succeed on the merits because Secretary Noem's determinations were not arbitrary and capricious. They were based on statutorily authorized criteria and completed within the timeframe selected by Congress. Plaintiff also fails to show that the remaining equitable factors tip the balance in their favor—and the Supreme Court necessarily reached the opposite conclusion in staying another district court's grant of nationwide preliminary relief with respect to TPS for Venezuela in *NTPSA*. Here, as there, the harms Plaintiff has alleged are speculative and inherent in the nature of TPS—a *temporary* status. And there is considerable public interest in the process Congress established being followed as it was intended and the public interest in prioritizing the safety, security, and wellbeing of Americans lends itself towards enforcement of immigration law.

Finally, Plaintiff's request for nationwide relief is vastly overbroad. The relief sought goes much further than redressing the injuries to the Plaintiff and contravenes equitable principles that

require relief to be no more burdensome to the defendant than is necessary to provide plaintiff relief. *Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 393 (4th Cir. 2001), *overruled on other grounds by Real Truth About Abortion, Inc. v. Fed. Election Comm'n*, 681 F.3d 544 (4th Cir. 2012). Should the Court grant Plaintiff relief, it should be limited in scope to Plaintiff's members.

## **BACKGROUND**

### I. Statutory Background

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to handle adequately the return of its nationals. Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary of Homeland Security,[4] "after consultation with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected [S]tatus," if she finds:

> (A) … that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety;

> (B) … that—

>> (i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected,

>> (ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and

---

[4] The statute originally vested the Attorney General with the power to make TPS designation, extension, and termination decisions. Congress transferred these powers to the Secretary of Homeland Security. *See* 8 U.S.C. § 1103; 6 U.S.C. § 557.

(iii) the foreign state officially has requested designation under this subparagraph; or

(C) … there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b)(1).

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be removed from the United States and are authorized to work for the duration of the country's TPS designation, so long as they remain in valid temporary protected status. 8 U.S.C. § 1254a(a), (c); *see Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations and extensions may not exceed eighteen months. 8 U.S.C. § 1254a(b)(2), (3)(C). The Secretary must consult with appropriate agencies and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id.* § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id.* § 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C). Finally, the statute makes the Secretary's TPS determinations unreviewable. Section 1254a(b)(5)(A) states: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection."

## II. Factual Background

### A.  TPS for Afghanistan

On May 20, 2022, former Secretary of Homeland Security Alejandro Mayorkas designated Afghanistan for TPS for a period of 18 months due to "ongoing armed conflict" and "extraordinary and temporary conditions." *Designation of Afghanistan for Temporary Protected Status*, 87 Fed. Reg. 30,976, 30,977 (May 20, 2022). Secretary Mayorkas extended and redesignated TPS for Afghanistan in 2023 for 18 months. *Extension and Redesignation of Afghanistan for Temporary Protected Status*, 88 Fed. Reg. 65,728, 65,728 (Sep. 25, 2023). On March 21, 2025, Secretary Noem terminated TPS for Afghanistan. Exh. 9, J.R. 83. Notice was published in the Federal Register on May 13, 2025, effective July 14, 2025. *Termination of the Designation of Afghanistan for Temporary Protected Status*, 90 Fed. Reg. 20,309, 20,309 (May 13, 2025) ("Afghanistan Termination"); Exh. 8, J.R. 70. Secretary Noem explained that based on her review and consultation with appropriate U.S. government agencies, including the Department of State, there have been notable improvements to security and the economic situation in Afghanistan such that repatriation no longer poses a threat to personal safety on account of armed conflict or extraordinary and temporary conditions. *Id.* at 20,310. The Secretary cited recent reports showing "no indication of systematic or scattered combat in the country" and that "large-scale violence is at its lowest in decades." *Id.* The Secretary noted that the number of individuals in need of humanitarian assistance has decreased by over 29 million in the past year and that gross domestic product growth is on the rise. *Id.* The Secretary determined that continuing to permit Afghan nationals to reside in the United States with TPS is not in the national interest and that U.S. foreign policy interests are best served by "curtailing policies that facilitate or encourage destabilizing migration." *Id.* at 20,311. The Secretary considered the putative reliance interests of those impacted by the termination decision, finding that they were outweighed by the overriding national interests articulated in the notice. *Id.* at 20,312.

## B.  TPS for Cameroon

On June 7, 2022, former Secretary Alejandro Mayorkas designated Cameroon for TPS for a period of 18 months due to "ongoing armed conflict" and "extraordinary and temporary conditions." *Designation of Cameroon for Temporary Protected Status*, 87 Fed. Reg. 34,706, 34,707 (June 7, 2022). Secretary Mayorkas extended and redesignated TPS for Cameroon in 2023 for a period of 18 months. *Extension and Redesignation of Cameroon for Temporary Protected Status*, 88 Fed. Reg. 69,945, 69,945 (Oct. 10, 2023). TPS for Cameroon under both the original designation and the redesignation remains in effect until June 7, 2025. *Id.* On June 2, 2025, United States Citizenship and Immigration Services released an unpublished notice in the Federal Register indicating that TPS for Cameroon will be terminated.[5] Publication of the Federal Register notice terminating TPS for Cameroon is expected on June 4, 2025. Exh. 10, J.R. 95.

## STANDARDS OF REVIEW

A court should dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate" the case. *Clay v. Consol. Penn. Coal Co., LLC.*, 955 F. Supp. 2d 588, 594 (N.D. W.Va. July 3, 2013); Fed. R. Civ. P. 12(b)(1). In reviewing a Fed. R. Civ. P. 12(b)(1) motion, the Court must accept all material factual allegations in the complaint as true, but it should not draw inferences favorable to the plaintiff. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012).

Summary judgment is warranted if "there is no genuine dispute of material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a party challenges an agency action under the APA, the usual summary judgment standard does not apply. *City of Columbus v. Cochran*, 523 F. Supp. 3d 731, 742–43 (D. Md. 2021). Instead, in deciding

---

[5] *See* https://public-inspection.federalregister.gov/2025-10236.pdf (last accessed Jun. 3, 2025); Exh. 10, J.R. 85.

whether an agency action was arbitrary and capricious, the "focal point for judicial review" should be the administrative record and the reviewing court "is confined to the administrative record compiled by the agency when it made its decision." *Id.* at 743 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

The standards of review for relief under 5 U.S.C. § 705 and for preliminary injunctions are the same. *See Sampson v. Murray*, 415 U.S. 61, 80 (1974). A preliminary injunction is an "extraordinary remedy [… which may] be granted only where the moving party clearly establishes entitlement to the relief sought." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). A plaintiff seeking a preliminary injunction must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (citing *Winter*, 555 U.S. at 20).

## ARGUMENT

## I. THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S ACTION

### A. The TPS Statute Bars the Relief Plaintiff Seeks.

The TPS statute is unambiguous: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). The statute commits to the Secretary's unreviewable authority any and all determinations concerning TPS designation, extension, and termination—as the Supreme Court's *NTPSA* stay strongly indicates.[6] *Ibid.* Accordingly, APA

---

[6] The Secretary's findings and determination – especially her "contrary to the national interest" finding—are unreviewable as committed to agency discretion by law. *See Lincoln v. Vigil*, 508 U.S. 182, 191 (1993); *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005); *see also Webster v. Doe*, 486 U.S. 592, 600 (1988).

challenges to such determinations are prohibited. *See* 5 U.S.C. § 701(a)(1)) (review is not available "to the extent that" a relevant statute precludes it); *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (APA cause of action is unavailable "to the extent the relevant statute 'preclude[s] judicial review'" (quoting 5 U.S.C. § 701(a)(1)); *see also Moore v. Frazier*, 941 F.3d 717, 721-22 (4th Cir. 2019); *Lee v. USCIS*, 592 F.3d 612, 619-20 (4th Cir. 2010); *Lin v. Heffron*, No. 3:21-cv-647-MOC-DCK, 2022 WL 820937, at *4 (W.D.N.C. Mar. 17, 2022), *aff'd*, No. 22-1380, 2023 WL 566343 (4th Cir. Jan. 27, 2023) (holding that the court had no jurisdiction to review a denial of a petition under the APA because the decision whether to grant or deny the petition was committed to agency discretion by law, and the INA precluded judicial review); *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) ("If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective.").

The clear intent of Congress was to grant the Secretary broad and unreviewable discretion in the exercise of her responsibilities under the TPS statute. *See* 8 U.S.C. §§ 1103(a), 1254a(b); 6 U.S.C. § 202; *see also United States v. Hasson*, 26 F.4th 610, 623 (4th Cir. 2022) ("'As in all statutory construction cases, we assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose.'") (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 376 (2013)). Put simply, Plaintiff's claims are not reviewable under § 1254a(b)(5)(A) and this Court should dismiss the FAC with prejudice or grant summary judgment in favor of Defendants. *Noem v. National TPS Alliance*, No. 24A1059 (S. Ct. May 19, 2025).

### B. 8 U.S.C. § 1252(f)(1) Bars Plaintiff's Claims for Injunctive Relief.

Setting aside or postponing a TPS determination would effectively "enjoin or restrain" the Secretary and DHS from implementing the Secretary's decision, and the Court lacks jurisdiction to enter such an order. The Supreme Court has held that 8 U.S.C. § 1252(f)(1)

"generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). And Section 1252(f)(1)'s prohibition applies not just to injunctions but also to any order that otherwise "restrain[s]" the Secretary. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (statute barring court orders that "suspend or restrain" tax collection stripped jurisdiction to enter injunctions or declaratory relief); *Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989)) ("restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action); *Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (finding court decree framed as declaratory judgment to be "the functional equivalent to an injunction" where the order required individuals to take certain actions).

By invoking 5 U.S.C. § 705 and asking this Court to postpone the effective date of the termination or to automatically extend the TPS designations for Afghanistan and Cameroon, *see* ECF No. 42, 1, Plaintiff seeks the type of coercive order prohibited by 8 U.S.C. § 1252(f)(1). Regardless of how Plaintiff styles its motion or frames its claims, its requested relief is barred. The relief Plaintiff requests would "enjoin or restrain" DHS from implementing the Secretary's TPS determinations for Afghanistan and Cameroon and is thus jurisdictionally barred under

§ 1252(f)(1).[7] The Court should deny Plaintiff's motion for stay.

## II. PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

Congress granted the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos v. Wolf*, 975 F.3d 872, 890 (9th Cir. 2020) (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). Even if this Court had jurisdiction to review the Secretary's TPS determinations for Afghanistan and Cameroon, Plaintiff has not shown that it is entitled to judgment as a matter of law.

### A.  The Secretary's TPS Determinations Are Procedurally Sound.

Plaintiff's assertion that the Secretary's determinations are procedurally deficient is without merit. Plaintiff argues that the Secretary's periodic review of the TPS determinations for Afghanistan and Cameroon was untimely. ECF No. 42, 2. Specifically, with respect to Afghanistan, Plaintiff says that the termination of TPS for Afghanistan was improperly effected because notice was published in the Federal Register fewer than 60 days before the end of the previous TPS extension. And with respect to Cameroon, Plaintiff says that because fewer than 60 days remain before the expiration of TPS for Cameroon and no decision has been published in the Federal Register, Defendants have failed to meet the procedural requirements under the TPS statute. *Id.*

Start with Afghanistan. Plaintiff's argument depends on conflating the requirement for providing timely *notice* of a TPS termination determination with the deadline for *making* that

---

[7] Although Section 1254a appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the INA, wherein the TPS provisions in Section 244 appear in Chapter 4. *Id.* When there is a conflict, the INA prevails. *See Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022). INA § 244 lies within chapter 4 of title II of the INA, as amended.

determination. The TPS statute directs the Secretary, "[a]t least 60 days before the end" of a TPS designation or extension period, to "review the conditions" in the country and "determine whether the conditions for [TPS] designation … continue to be met." 8 U.S.C. § 1254a(b)(3)(A). The Secretary timely made her determination to terminate TPS for Afghanistan on March 21, 2025, more than 60 days before the end of the TPS extension period on May 20, 2025.

The TPS statute separately addresses the timing and consequences of the publication of that determination. It does not set a deadline for publication of the determination, unlike for making the determination. Instead, it provides that termination of a designation "shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension." 8 U.S.C. § 1254a(b)(3)(B). Here, notice of the Secretary's determination terminating TPS for Afghanistan was published in the Federal Register on May 13, 2025, with an effective date of July 14, 2025, 60 days later. *Afghanistan Termination*, 90 Fed. Reg. 20,309; Exh. 8, J.R. 70. Thus, the Secretary timely made her determination on March 21, 2025 following review of conditions in consultation with other appropriate agencies and timely publication in the Federal Register on May 13, 2025 provided sufficient notice. 8 U.S.C. § 1254a(b)(3)(A)–(B).

As for Cameroon, the TPS designation for Cameroon currently remains in effect, pursuant to the 2023 extension and redesignation, until June 7, 2025. *Extension and Redesignation of Cameroon for Temporary Protected Status*, 88 Fed. Reg. 69,945. Most obviously, at the time Plaintiff filed the FAC, the Secretary had not yet published any determination about whether to extend or terminate Cameroon's TPS designation. Notice of the Secretary's intent to terminate TPS for Cameroon was released on June 2, 2025, but as of the filing of this brief, the Federal Register notice terminating TPS and providing an end date for TPS holders has yet to be published.

*See* Exh. 9, J.R. 81, 91. Plaintiff has no basis to challenge noncompliance with statutory timing requirements for the effective date of such a determination, since publication has not yet occurred. *Id.* at 91.

Likewise, the Secretary's determination concerning the future of TPS for Cameroon is not past due. Plaintiff's theory is that *publication* of the determination is overdue—FAC, ¶ 1, 3-4—but, as explained, the statute does not impose that timing requirement, and Plaintiff does not separately allege that the Secretary has not yet made a determination about whether to extend or terminate TPS for Cameroon. As the process for Afghanistan indicates, a TPS determination can substantially precede publication of that determination. So this is likewise no basis for concluding that the Secretary has failed to comply with required procedures.

Because the Secretary has followed the statutory timelines provided in 8 U.S.C. § 1254a, summary judgment should be granted in Defendants' favor on Counts I, III, and IV of the FAC.

## B. The Secretary Considered the Appropriate Statutory Factors in Terminating TPS for Afghanistan.

The Secretary has been entrusted with broad authority in administering the TPS statute, and while Section 1254a requires the Secretary to review conditions within foreign states designated for TPS periodically, any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C. § 1254a(b)(3)(A)–(C). The statute, in relation to certain designations, also requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (citing *Trump v.*

*Hawaii*, 585 U.S. 667, 684-86 (2018))). The Secretary took the steps required by the TPS statute—Plaintiff simply disagrees with the outcome.

Plaintiff challenges the Secretary's termination determination for three reasons, none of which is persuasive. *First*, Plaintiff points to the Federal Register Notice's references to Executive Order 14,159, ECF No. 42, 23, to suggest that the Secretary's determination is the result of a "preordained White House directive." *Id.* The Secretary did indeed acknowledge considering, among other things, the Administration's immigration policy prerogatives, *Afghanistan Termination*, 90 Fed. Reg. 20,311, but "[i]t is hardly improper for an agency head to come into office with policy preferences and ideas, discuss them with affected parties, sound out other agencies for support, and work with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of Commerce v. New York*, 588 U.S. 752, 78 (2019). As the Supreme Court has explained, "a court may not set aside an agency's policymaking decision solely because it may have been influenced by political considerations or prompted by Administrative priorities…. Such decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest groups, foreign relations, and national security concerns (among others). *Id.* at 782; *see Ramos*, 975 F.3d at 897-98 ("It is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies.").[8]

*Second*, Plaintiff argues that the termination of TPS for Afghanistan failed to meet the statutory requirements because it did not find that there is no longer "an ongoing armed conflict"

---

[8] As part of this argument, Plaintiff repeatedly accuses Secretary Noem of participating in an effort "to reduce the number of non-white immigrants in this country." ECF 42 at 3, 23, 25-26. Defendants emphatically reject this characterization of the Administration's and Secretary Noem's actions and motivations, and do not respond substantively only because of the Court's directive to present equal-protection arguments exclusively in future filings.

that would "pose a serious threat [TPS holders'] personal safety" if recipients were to return to Afghanistan and instead relied on a finding that TPS was not in the national interest. ECF No. 42, 24. That argument fails. The Afghanistan TPS designation was based on both the "ongoing armed conflict" ground, 8 U.S.C. § 1254a(b)(1)(A), and the "extraordinary and temporary conditions" ground, *id*. § 1254a(b)(1)(C). *See Designation of Afghanistan for TPS*, 87 Fed. Reg. 30,976 (May 20, 2022). One of the conditions for a designation under the latter ground is a finding by the Secretary that "permitting the aliens to remain temporarily in the United States is [not] contrary to the national interest of the United States," 8 U.S.C. § 1254a(b)(1)(C), and the Secretary must terminate the designation under that ground if that condition is no longer met, *id*. § 1254a(b)(3)(B). Consistent with that requirement, Secretary Noem reviewed Afghanistan's TPS designation, consulted with the appropriate Government agencies, and determined that Afghanistan no longer continues to meet the conditions for designation. *Afghanistan Termination*, 90 Fed. Reg. 20, 310; Exh. 8, J.R. 71.

The Secretary considered: (1) whether requiring Afghan nationals to return to Afghanistan would pose a serious threat to their personal safety due to an ongoing armed conflict, 8 U.S.C. § 1254a(b)(1)(A); (2) whether extraordinary and temporary conditions continued to exist preventing Afghan nationals from returning in safety, *id.* § 1254a(b)(1)(C); and (3) whether permitting Afghan nationals to remain temporarily is contrary to the national interest of the United States, *id.* § 1254a(b)(1)(C). Based on her consultation with the U.S. Department of State, Secretary Noem concluded that there were "improvements in the security and economic situation such that requiring the return of Afghan nationals to Afghanistan does not pose a threat to their personal safety due to armed conflict or extraordinary and temporary conditions," and that "permitting Afghan nationals to remain temporarily in the United States is contrary to the national

interest of the United States." *Id.* The Secretary explained that "there is no indication of systematic or scattered combat in the country" and that "there is no place in Afghanistan where armed opposition groups have an overt presence," noting a record decrease in the use of improvised explosive devices and a drop in attacks against civilians. *Id.* The Secretary recognized the significant decline in need for humanitarian care and economic growth over the past year. *Id.* The Secretary explained further that with respect to the "extraordinary and temporary conditions' ground that "'[n]ational interest' is an expansive standard that may encompass an array of broad considerations, including foreign policy, public safety, national security, migration factors, immigration policy, and economic considerations." *Id.* at 20,311. In her termination notice, Secretary Noem appropriately considered these factors and provided her reasons for terminating the Afghanistan's designation, including valid public safety and national security concerns, the impact of destabilizing migration, and adverse impacts on and foreign relations. *Id.* The Secretary's reasoned determination was unquestionably a lawful exercise of her authority to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *see Poursina,* 936 F.3d at 874.

*Third*, Plaintiff attacks the Secretary's statement in the Federal Register Notice that "there are Afghan nationals who are TPS recipients who have been the subject of administrative investigations for fraud, public safety, and national security," arguing that such investigations bear no relevance on a TPS determination. ECF No. 42, 25. As discussed above, however, public safety and national security interests are indeed appropriate in determining whether the continuation of TPS is in the national interest. And though Plaintiff asserts that Defendants failed to explain how this issue may be addressed through modifications to the vetting process rather than termination of TPS—ECF No. 42, 25—the statute, which commits such findings to the Secretary's

discretionary judgment, does not require such remedial measures. *See generally* 8 U.S.C. § 1254a.

Here, the Secretary—under the broad authority Congress granted her—consulted with the appropriate government agencies, considered the pertinent, statutorily authorized criteria, and ultimately concluded that termination of TPS for Afghanistan was warranted. Plaintiff cannot prevail on summary judgment simply because it does not like the outcome of that determination, and summary judgment as to Count II should be granted in Defendants' favor.

## III. PLAINTIFF IS NOT ENTITLED TO A STAY OF AGENCY ACTION.

The standards of review for a stay under 5 U.S.C. § 705 and for preliminary injunctions are the same. *See Sampson*, 415 U.S. at 80. A party seeking a preliminary injunction must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. (citing *Winter*, 555 U.S. at 20). Plaintiff's request for a stay in the alternative should be denied because it cannot demonstrate these eligibility criteria.

### A.  Plaintiff Cannot Establish a Likelihood of Success on the Merits.

A plaintiff seeking a preliminary injunction must show that it is likely to succeed on the merits. *Di Biase*, 872 F.3d at 230. For the reasons discussed *supra*, Section I, this Court lacks jurisdiction to hear all of Plaintiff's claims. But even if jurisdiction were proper, as discussed *supra*, Section II A-B, the Secretary's decisionmaking was procedurally sound. Plaintiff cannot demonstrate likelihood of success on the merits sufficient to warrant an injunction.

### B.  Any Harms Plaintiff May Suffer are Inherent in the Temporary Nature of TPS.

A plaintiff seeking a preliminary injunction must also show that it is likely to suffer irreparable harm in the absence of granting such relief. *Di Biase*, 872 F.3d at 230; *see also Winter*, 555 U.S. at 20. The plaintiff must show "more than just the 'possibility' of irreparable harm." *Di Biase*, 872 F.3d at 230. Plaintiff has failed to make the requisite showing here.

Plaintiff alleges numerous injuries, but all purported harms are inherent in the temporary nature of TPS. For example, Plaintiff alleges that loss of TPS would result in loss of TPS employment authorization resulting in economic hardship, that TPS beneficiaries will be unable to support their families stateside and abroad, and that TPS beneficiaries experience fear and anxiety due to the prospect of return to Afghanistan. ECF No. 42, 27-28. But the underlying cause of these harms flows from the statute ("temporary" protected status) itself. *See* 8 U.S.C. § 1254a(b)(1)(B)(i) ("substantial, but temporary"), (b)(1)(B)(ii) ("temporarily"), (b)(1)(C) ("extraordinary and temporary," "remain temporarily in the United States"). Undeniably, these alleged harms would exist with or without termination. As explained, a country's TPS designation must be reviewed at least every 18 months, and there is no guarantee of further extension. 8 U.S.C. § 1254a(b)(2)(B), (b)(3). A TPS beneficiary is therefore always subject to the same uncertainties and concerns that Plaintiff alleges here. In this regard, Plaintiff's alleged harms wholly ignore the inherently temporary nature of the statute.

Furthermore, "'[t]he possibility that […] other corrective relief will be available at a later date … weighs heavily against a claim of irreparable harm.'" *Di Biase*, 872 F.3d at 230 (citing *Sampson*, 415 U.S. at 90). There may be alternative avenues of relief based on Plaintiff's members' specific circumstances such as asylum, withholding of removal under the Immigration and Nationality Act, or withholding of removal or deferral of removal under the Convention Against Torture regulations. To the extent that TPS recipients from Afghanistan fear for their safety at the prospect of returning to Afghanistan, ECF No. 42, 28, they are free to pursue alternative pathways to more durable protection that would address their individual circumstances (e.g., asylum) as opposed to TPS, which offers only temporary status to a group of people based on "extraordinary and temporary conditions in the[ir home] state." 8 U.S.C. § 1254a(b). *See, e.g.*, *Di Biase*, 872 F.3d

at 235 ("Given the extraordinary nature of the remedy, a preliminary injunction is not warranted where, as here, the moving parties have not shown that they have availed themselves of opportunities to avoid the injuries of which they now complain").

Finally, even if Plaintiff has identified concrete harms, those harms will not be remedied by the requested injunction. Because Plaintiff has failed to show a likelihood of irreparable harm that could be remedied by this Court, its request for emergency interim relief should be denied. *See Miranda v. Garland*, 34 F.4th 338, 346 (4th Cir. 2022) (denying plaintiffs' preliminary injunction because they failed to "sho[w] that they are likely to suffer irreparable harm in the absence of preliminary relief"); *see also Di Biase*, 872 F.3d at 235 ("Plaintiffs failed to demonstrate they were likely to suffer irreparable harm without the injunction"); *Students for Fair Admissions v. U.S. Naval Acad.*, 707 F. Supp. 3d 486, 509 (D. Md. Dec. 20, 2023) (accord); *Harrell v. Univ. of Maryland Sch. of Pharm.*, No. CV MJM-24-104, 2024 WL 2155023, at *5 (D. Md. May 13, 2024) (accord).

Because the very nature of TPS is temporary, as dictated by law, the potential for economic hardship, anxiety, and fear of return to Afghanistan are not irreparable harms arising from the termination of TPS for Afghanistan but rather the nature of the status.

**C. The Balance of Equities and Public Interest Weigh Against Injunctive Relief.**

Plaintiff also fails to show that the remaining equitable factors tip the balance in its favor, particularly in light of the Supreme Court's recent stay in *NTPSA*. When the Supreme Court evaluates whether or not to stay a lower court's order, it considers the likelihood of success on the merits, purported irreparable harm should the stay be denied, and the equities and public interest. *Hollingsworth*, 558 U.S. at 190. In ruling in the government's favor in *NTPSA*, a case premised on the same asserted harms and similar legal theories as those pressed by Plaintiff here, the Supreme

Court considered these factors and concluded that they tipped in the government's favor. That conclusion is dispositive with respect to those factors in this case, too.

   As the Supreme Court has explained in an immigration context, the questions of harm to the defendant and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The government and the public share an interest in ensuring that the process established by Congress—under which the Secretary of Homeland Security has unreviewable authority to carefully weigh the statutory factors governing TPS designations—is followed as Congress intended. The government has an "obligation to prioritize the safety, security, and financial and economic well-being of Americans." *Protecting the American People Against Invasion*, Exec. Order No. 14159, § 1, 90 Fed. Reg. at 8,443. In this vein, "[e]nforcing [the n]ation's immigration laws is critically important to the national security and public safety of the United States." Similarly, the Supreme Court recently stayed a preliminary injunction suspending the Government's termination of a parole program, again concluding that the harms the Government faces from nationwide injunctions barring it from implementing immigration policies outweigh harms to opposing parties. *See Noem v. Doe*, No. 24A1079, 605 U.S. __, 1 (May 30, 2025); *see id.* at __ (slip op., at 5-8) (Jackson, J., dissenting) (criticizing the majority's balancing of the equities in the Government's favor).

   Ultimately, just as in *NTPSA* and closely akin to *Noem v. Doe*, the relief Plaintiff seeks would frustrate the Secretary's substantive judgment as to how to implement the TPS statute in accordance with the government's established interests. *See Miranda*, 34 F.4th at 365-366 (balancing the equities and public interest, the Court held that it was improper to grant a preliminary injunction which infringed upon the Attorney General's discretion under 8 U.S.C. § 1226(a) to detain aliens pending their removal proceedings, stressing that "[t]he enforcement of

our immigration laws is the government's 'sovereign prerogative'") (citing *Rusu v. INS*, 296 F.3d 316, 320 (4th Cir. 2002)). Congress has given the Secretary, in consultation with the appropriate agencies, the broad discretion to assess conditions in foreign countries and reach determinations regarding TPS. It is in the public interest that where the Secretary follows the statutory requirements, and the Court should deny the extraordinary remedy of preliminary injunctive relief.

### D.  Plaintiff's Requested Relief is Overly Broad.

Even if a preliminary injunction (or "stay" accomplishing the same effect) were warranted here, Plaintiff has no basis to request universal relief benefitting non-parties. *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 258–59 (4th Cir. 2020) (Wilkinson, J.), reh'g en banc granted, 981 F.3d 311 (2020) ("Relatedly, nationwide injunctions are incompatible with the well-recognized bar against litigants raising the rights of others."). Under settled constitutional and equitable principles, the Court may not issue relief that is broader than necessary to remedy actual harm shown by specific plaintiffs. *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018); *Lewis v. Casey*, 518 U.S. 343, 358 n.5 (1996) ("[S]tanding is not dispensed in gross[.]"). A valid remedy "operate[s] with respect to specific parties," not with respect to a law "in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021) (quotation marks omitted).

In this case, where sensitive foreign policy decisions of the Executive Branch are implicated, an injunction should go no further than redressing any cognizable injuries to individual named plaintiffs. *See Arizona v. United States*, 567 U.S. 387, 409 (2012) (holding the federal government must speak "with one voice" in determining "whether it is appropriate to allow a foreign national to continue living in the United States"). Universal preliminary relief here circumvents the requirement to limit relief to the Parties. Plaintiff, which does not raise class claims in its Complaint and has not moved to certify a class under Rule 23, has made no effort to explain why it should be entitled to such sweeping relief.

Granting universal relief in this situation is also contrary to the principle that "a federal court of appeals' decision is only binding within its circuit" and it "'substantially thwarts the development of important questions of law by freezing the first final decision rendered on a particular legal issue.'" *Va. Soc'y for Human Life, Inc.*, 263 F.3d at 393 (quoting *United States v. Mendoza*, 464 U.S. 154, 160 (1984)); *Ramos*, 975 F.3d. at 902–06 (Nelson, J., concurring). A nationwide order would be particularly egregious in the instant matter given that there are, as of the date of this filing, at least four other TPS cases, including three in other jurisdictions and one in this jurisdiction.[9] Nationwide grants of preliminary, emergency relief also encourage forum shopping and effectively nullify the decisions of other district or circuit courts nationwide. *United States v. Texas*, 599 U.S. 670, 693 (2023); *CASA, Inc. v. Trump*, No. 25-1153, 2025 WL 654902, at *3 (4th Cir. Feb. 28, 2025) (Niemeyer, J., dissenting) ("Thus, the district court's order in this case could have the effect of preempting or at least interfering with the orders in these other districts. It implicates unnecessarily potentially conflicting orders or reasoning, claims preclusion, res judicata, and other similar principles that order the work of different courts."); *DHS v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring).

## CONCLUSION

This Court is jurisdictionally barred from reviewing the Secretary's TPS determination under both the TPS statute and 8 U.S.C. § 1252(f)(1). Even if this Court were to find that neither of the two clear jurisdictional bars applies, Plaintiff has not demonstrated entitlement to judgment as a matter of law nor that injunctive relief is warranted. This Court should dismiss Plaintiff's

---

[9] *See National TPS Alliance, et al. v. Noem, et al.*, No. 25-1766 (N.D. Cal. filed Feb. 19, 2025); *CASA, Inc.et al. v. Noem, et al.*, No. 25-525 (D. Md. filed Feb. 20, 2025); *Haitian-Americans United Inc., et al. v. Trump, et al.*, No. 25-10498 (D. Mass. filed Mar. 3, 2025); and *Haitian Evangelical Clergy Ass'n, et al. v. Trump, et al.*, No. 25-1464 (E.D.N.Y. filed Mar. 14, 2025).

claims with prejudice in their entirety or alternatively grant partial summary judgment as to Counts

I-IV of the FAC in favor of Defendants.

Dated: June 3, 2025                          Respectfully Submitted,

                                             YAAKOV M. ROTH
                                             Acting Assistant Attorney General

                                             SARAH L. VUONG
                                             Assistant Director

                                             WILLIAM H. WEILAND
                                             Senior Litigation Counsel

                                             LAUREN BRYANT
                                             CATHERINE ROSS
                                             ERIC SNYDERMAN
                                             ANNA L. DICHTER
                                             JEFFREY HARTMAN
                                             CARLTON F. SHEFFIELD
                                             Trial Attorneys

                                             /s/ Amanda B. Saylor
                                             AMANDA B. SAYLOR
                                             Trial Attorney
                                             U.S. Department of Justice, Civil Division
                                             Office of Immigration Litigation
                                             P.O. Box 868 Ben Franklin Station
                                             Washington, D.C. 20044
                                             (202) 598-6837
                                             Amanda.B.Saylor@usdoj.gov

                                             *Counsel for Defendants*