BRETT A. SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
WILLIAM H. WEILAND
Acting Assistant Director
ANNA L. DICHTER
Senior Litigation Counsel
LAUREN BRYANT
JEFFREY HARTMAN
CATHERINE ROSS
AMANDA B. SAYLOR
ERIC SNYDERMAN
SHELBY WADE
DANIEL CAPPELLETTI
ILANA KRAMER
RODOLFO SAENZ
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-0770
Facsimile: (202)-305-7000
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| CASA INC., <br><br> PLAINTIFF, <br><br> V. <br><br> KRISTI NOEM, Secretary of Homeland Security, *et al.*, <br><br> DEFENDANTS. | Case No. 8:25-cv-1484-TDC |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS V AND VIII OF PLAINTIFF'S SUPPLEMENTED FIRST AMENDED COMPLAINT**

1

## INTRODUCTION

This Court has not already concluded that Plaintiff plausibly alleged its equal protection claims. Plaintiff tried—unsuccessfully—to stymie Defendants' right to brief these issues by suggesting that this Court has "effectively concluded" the legal sufficiency of these claims, a prerogative Plaintiff continues to propound in its opposition. ECF No. 78. But Plaintiff's sweeping inference—and suggestion that the Court can simply side-step the appropriate equal protection analysis—is incorrect and procedurally improper. Plaintiff's opposition also fails to meaningfully distinguish its allegations of discriminatory intent from the strikingly similar allegations that did not suffice to state a claim in *Regents*. Plaintiff further fails to state a claim where it argues that the Secretary's consideration of Executive Order 14,159 and omission of a specific, stated national interest were erroneous when the Secretary's decision-making followed the proper procedures and relied on the proper considerations. Finally, Plaintiff has failed to state a claim that the Secretary's decision-making was infected by discrimination or racial animus. Plaintiff continues to demand incongruous relief and a reweighing of the evidence indicative not of a procedural challenge, but rather a substantive challenge to the TPS termination decisions. This Court has already recognized that any reweighing of the evidence would likely be prohibited by the jurisdictional bar at 8 U.S.C. § 1254a(b)(5)(A)—ECF No. 76 at 20-21—and the Ninth Circuit Court of Appeals recently granted a stay pending appeal in another Temporary Protected Status ("TPS") case with very similar arguments to those made here. *Nat. TPS Alliance v. Noem*, No. 25-4901 (9th Cir.).

For these reasons and the reasons explained in Defendants' motion, ECF No. 99, Counts V and VIII must be dismissed.

**ARGUMENT**

I. **THE COURT'S JULY 10 ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE APA CLAIMS IS NOT DISPOSITIVE OF CLAIMS THAT THE COURT BIFURCATED, DECLINED TO CONSIDER IN THAT DECISION, AND ORDERED THE PARTIES TO BRIEF SEPARATELY.**

At the threshold, Plaintiff asks the Court not to evaluate Defendants' motion to dismiss at all. Its heavy—and mistaken—reliance on this threshold argument, Pl. Opp. at 1, just signals the weakness of its equal protection claims.

Defendants have sought the opportunity to challenge the legal sufficiency of Plaintiff's equal protection claims from the onset of this lawsuit. *See, e.g.* ECF No. 44. However, the Court deferred briefing on Plaintiff's equal protection claims until after the APA claims were resolved. ECF No. 49. Both parties agreed to this arrangement. *Id.* at ¶ 2; *see also* ECF No. 64-2 at J.R. 98. Yet when Defendants promptly sought the opportunity to make good on this agreement, *one day* after this Court issued its order on the APA claims, Plaintiff opposed. ECF No. 78. Plaintiff's argument then was the same as it is now—that this Court has "effectively concluded" that these counts have been plausibly alleged. *Id.*; *see also* Pl. Opp. at 1.

The Court permitted Defendants to move to dismiss despite Plaintiff's argument. ECF No. 98, 99. Plaintiff would have this Court now turn its order to separately brief the legal sufficiency of Plaintiff's equal protection claims into a bait and switch. This would be fundamentally unfair, prejudicial to Defendants, contrary to the parties' prior agreement which this Court endorsed, and contrary to the Court's decision permitting Defendants to file a separate motion to dismiss on the equal protection claims. ECF No. 49; ECF No. 98. Defendants were not afforded the opportunity to brief the legal sufficiency of the equal protection claims in their prior briefing, nor were Defendants permitted to argue them at the June 24 hearing. ECF No. 49, 98. Plaintiff cannot side-step its obligation to sufficiently plead the equal protection claims by relying on the Court's APA

2

order. If this were possible, there would have been no need to bifurcate briefing in the first place. Perhaps most troubling, Plaintiff would have this Court copy-and-paste its reasoning as to Plaintiff's APA claims to Plaintiff's equal protection claims without any consideration whatsoever of the legal distinctions between the claims. This Court should properly—and separately—analyze the equal protection claims it bifurcated from the APA claims.

II. **PLAINTIFF'S CLAIMS OF DISCRIMINATORY INTENT AND PREORDAINED DECISIONMAKING ARE SPECULATIVE AND UNSUPPORTED.**

Plaintiff relies heavily on the threshold argument that the Court has already decided its claims because its arguments in support of its claim are meritless. *Regents* controls here, and the Court should dismiss the equal protection claims.

A. <u>The Supreme Court has rejected allegations of discriminatory intent akin to those alleged here and this Court should follow suit.</u>

Plaintiff relies on *Regents* for the premise that strict scrutiny applies here, but it ignores the unmistakable parallel between the equal protection claims raised in *Regents* and Plaintiff's claims here. Pl. Opp. at 3-4, 9, 12-14. The Court in *Regents* ultimately found—on strikingly similar allegations—that the plaintiffs there failed to state an equal protection claim. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 34-35 (2020).

Defendants continue to assert that *Hawaii* controls the standard of review and rational basis review is the proper standard here. *See* ECF No. 99. Even under *Arlington Heights*, which Plaintiff alleges to be controlling precedent, Plaintiff fails to plausibly allege that discriminatory purpose was a motivating factor behind the challenged decisions. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Plaintiff's claims of discriminatory intent rest on three premises: (1) that the Administration's immigration actions have reduced non-white immigration while eliminating barriers for white immigrants, (2) that the Secretary's TPS determinations for Afghanistan and Cameroon departed from the typical process, and (3) that

3

Administration officials have made disparaging remarks about non-white immigrants. ECF No. 41 at ¶ 8; *see also* Pl. Opp. at 8-15. Those are exactly the same sorts of allegations at issue in *Regents*, where the plaintiffs challenged the recission of Deferred Action for Childhood Arrivals (DACA) and brought claims alleging (1) disparate impact of the rescission on Latinos from Mexico, who represented 78% of DACA recipients; (2) the unusual history behind the rescission; and (3) pre- and post-election statements made by President Trump, claiming that these statements evidenced the discriminatory intent behind DACA's recission. *Regents*, 591 U.S. at 33-34.

Plaintiff's attempts to distinguish its claims from those in *Regents* fail.

*First*, Plaintiff attempts to distinguish its claim from *Regents* by asserting not only disparate impact but that these decisions reflect a broader effort to reduce immigration of non-white individuals while increasing immigration of white individuals. Pl. Opp. at 13-14. In support, Plaintiff points to other TPS actions that have taken place in this Administration; the termination of parole programs for noncitizens from Cuba, Haiti, Nicaragua, and Venezuela; the revocation of student visas; the admission of Afrikaners by way of the United States Refugee Admissions Program; and President Trump's proposed "gold card" program. ECF No. 41 at ¶¶ 70-75; Pl. Opp. at 10-11.

Plaintiff fails to identify any material distinction from *Regents*. The allegations Plaintiff identifies are, at bottom, just another way of saying the Administration's actions have had a disparate impact on non-white immigrants. That disparate impact argument fails for the same reasons as the *Regents* disparate-impact argument. As *Regents* explained, the mere fact that an action with respect to an immigration program will have a disparate racial impact does not suggest discriminatory intent when individuals of a particular race make up an outsized share of those affected by the immigration program, as is often the case in the immigration context under any

4

presidential administration. *Regents*, 591 U.S. at 33-35; *see, e.g.*, *Termination of Designation for Rwanda Under [TPS] Program After Final Six-Month Extension*, 62 Fed. Reg. 33,442 (Jun. 19, 1997) (termination of TPS for Rwanda during Clinton administration); *Six-Month Extension of [TPS] Benefits for Orderly Transition Before Termination of Liberia's Designation for [TPS]*; 81 Fed. Reg. 66,059 (Sept. 26, 2016) (termination of TPS for Liberia during Obama administration). Just as DACA recipients were disproportionately Latino, countries that have been designated for TPS nearly all have predominantly non-white populations. *See* ECF No. 104 at Ex. A pg. 9; ECF No. 105 at Ex. A. That termination of TPS designations, just like the rescission of DACA, predominantly affect non-white populations thus does not suggest discriminatory intent. *Regents*, 591 U.S. at 33-35 (finding that when the population of individuals affected by an immigration relief program make up an "outsized share" of the recipients of the relief, it does not establish a "plausible equal protection claim." "Were this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds.").

The other actions Plaintiff references that this Administration has taken similarly pertain to forms of relief that have also disproportionately impacted non-white populations in the immigration context. ECF No. 105 at Ex. B. Again, this does not suffice to plausibly allege racial animus. And Plaintiff's passing reference of two isolated programs perceived to favor white immigrants does not come close to changing that outcome. *Id*. It also ignores that the Trump Administration has also taken actions benefitting aliens from majority-nonwhite countries, such as permitting deferred enforced departure ("DED") for Venezuela, 86 Fed. Reg. 6,845 (Jan. 25, 2021), extending Somalia's TPS designation, 83 Fed. Reg. 43,695 (Aug. 27, 2018), and allowing for a lengthy and extended winddown period following the end of DED for Liberia, 84 Fed. Reg. 12,867 (Apr. 2, 2019).

5

Plaintiff's opposition is circular, implying that having a disparate impact on certain groups proves an intention to have a disparate impact (and that the intention is implied by the result). Moreover, Plaintiff fails to distinguish their allegations from the allegations in *Regents*.

*Second*, Plaintiff argues that the timing of each termination decision here—roughly three months into this Administration—and the Federal Register Notices' (FRN) purported reliance on Executive Order 14,159 are evidence that Secretary Noem bypassed typical processes in reaching her decisions.[1] Pl. Opp. at 11-12. But the argument is devoid of any merit because the decisions were made when the statute required them to be made, regardless of the timing of a change in administrations. The statute *directs* the Secretary to periodically review TPS designations at least 60 days prior to their expiration. 8 U.S.C. § 1254a(b)(3). Here, the TPS designations for Afghanistan and Cameroon were set to expire on May 20, 2025 and June 7, 2025, respectively. *See* 8 U.S.C. § 1254a(b)(3)(A); Afghanistan AR, ECF No. 59 at J.R. 116; Cameroon AR, ECF No. 70 at 1. The Secretary had no influence on those expiration dates, as they were established by the prior Administration's extensions and redesignations of TPS for each country. Afghanistan AR at J.R. 193-202; Cameroon AR at 75-83. And the Secretary's review of country conditions was an exercise of this statutorily mandated review, the timing of which was set well before her appointment as Secretary. Furthermore, as the administrative records indicate, the Secretary relied on information gathered both before and after she assumed her role to make the termination determinations. *See, e.g.* Afghanistan AR at J.R. 120-30; Cameroon AR at 12-48. Plaintiff's suggestion that the timing suggested procedural irregularity and discriminatory intent is baseless.

*Third*, Plaintiff alleges that certain statements made by President Trump and Secretary Noem are indicative of discriminatory motive. Pl. Opp. at 9-10. Plaintiff again fails to distinguish

---

[1] Defendants address the Executive Order argument *infra*.

6

these allegations from the strikingly similar statements alleged in *Regents*, which the Court held were "unilluminating" and failed to state a claim for relief. *Regents*, 591 U.S. at 33-34. The statements Plaintiff asks this Court to consider here suffer the same fate because they too are remote in time and unrelated to the Secretary's decisions to terminate TPS for these countries. *See, e.g.,* ECF No. 41 at ¶¶ 83-99 (statements made by President Trump, who is not tasked with TPS decision-making); ECF No. 41 at ¶¶ 86, 90, 94, 96, 101, 103-04 (statements made concerning the unrelated topics of criminal activity, gangs, and danger in the United States). Importantly, the statements Plaintiff cites do not speak to any racial or ethnic characteristic, nor do they pertain to the Secretary's TPS determinations for Afghanistan or Cameroon. *See generally id.* at ¶¶ 83-104.

    B. <u>The Secretary's consideration of Executive Order 14,159 is neither improper nor indicative of discriminatory intent or racial animus.</u>

Plaintiff also alleges that the Secretary's reference to Executive Order 14,159 in each of the FRNs indicates that she departed from the proper procedure for terminating a TPS designation. Pl. Opp. at 12. Plaintiff argues that this suggests a mismatch between the Secretary's decisions and rationales, indicia of a preordained outcome. Neither inference follows, so Plaintiff's reliance on the Executive Order does not salvage its claims.

First, Plaintiff's mismatch theory. As discussed fully in Defendants' Opposition to Plaintiff's Motion to Complete the Administrative Record or for Extra-Record Discovery, the fact that TPS recipients may have current lawful status does not invalidate the impact a TPS determination may have on the increase or continued presence of illegal aliens in the United States. *See* ECF No. 105 at 21-22. While TPS determinations directly affect TPS recipients, they also affect those who may aspire to gain TPS protections, including those considering whether to migrate to the United States or remain in the United States unlawfully in hope of a future

7

redesignation. Consideration of Executive Order 14,159, alongside the current lawful status of TPS holders, does not create a "mismatch" between the Secretary's decisions and rationale.

Second, Plaintiff's "preordained" theory. Plaintiff argues that the Secretary's reference to the Executive Order 14,159 shows that she was improperly driven to reach a preordained outcome. Pl. Opp. at 11-12, 14. To be clear, the Secretary's decisions were not preordained and she did not base either determination solely on executive order directives but rather on a myriad of sources including the Executive Order. *See* Afghanistan AR, Cameroon AR. And the Executive Order did not remotely instruct the Secretary to take any particular action with respect to these TPS designations (or any others). It just directed the Secretary to "ensur[e] that designations of Temporary Protected Status are consistent with the provisions of … 8 U.S.C. § 1254a … and that such designations are appropriately limited in scope and made only for so long as may be necessary to fulfill the textual requirements of that statute." 90 Fed. Reg. 8,446. That directive to consider the statutory criteria does not remotely preordain any decision and it does not remotely suggest racial animus.

Further, consideration of executive interests by the Secretary is not improper in any way. An agency need not preserve a blank-slate open mind, free from any influence within or outside the Executive Branch, in order to make a valid decision. *See, e.g. Ctr. for Biological Diversity v. United States Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 75 (D.D.C. 2022) (affirming the government's definition of "agency" as "essentially preordained by Congress"); *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) (affirming agency's decision to disregard comments that were "diametrically opposed to the direction of" an executive order, as agencies in the Executive Branch "must implement the President's policy directives to the extent permitted by law"*); see also Bldg. & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) ("[T]he

President's power necessarily encompasses 'general administrative control of those executing the laws,' throughout the Executive Branch of government, of which he is the head." (citation omitted)); *State v. Su*, 121 F.4th 1, 14-16 (9th Cir. 2024) (rejecting argument that executive orders insulate agency actions from APA review but never suggesting that agencies are forbidden from implementing executive orders); *Bradford v. U.S. Dep't of Labor*, 101 F.4th 707, 731 (10th Cir. 2024) (agency's implementation of executive order was not arbitrary and capricious even when "the agency had no discretion to act otherwise" under the order and the relevant statutory scheme).

In any event, here, the overwhelming evidence demonstrates that the Secretary's decisions were informed by many sources—recommendations from both senior government officials and career government employees, country conditions reports prepared by other U.S. government agencies and non-governmental organizations, prior TPS determinations, news reports from around the world, congressional research reports, and Executive Order 14,159. *See* Afghanistan AR; Cameroon AR. The Secretary concluded that termination of TPS for each country was necessary due to changes in the conditions in each country and in the national interest. That the Secretary considered, among many sources, an executive order is not improper or discriminatory and Plaintiff's supplemented Amended Complaint fails to sufficiently plead otherwise.

C. <u>The Secretary may determine that a TPS determination is contrary to the national interest without stating a specific reason.</u>

Plaintiff suggests that a national interest determination must be supported by a specific or stated reason. Pl. Opp. at 6-7. That is incorrect for several reasons. First, the TPS statute does not prescribe any such requirement. *See generally*, 8 U.S.C. § 1254a. Second, even if it did, the Secretary provided a sufficient explication of her reasons justifying her national interest determination. Third, Plaintiff's demand for additional reasoning runs counter to the Supreme Court's recognition that the Executive Branch need not always publicly state its complete views

9

on a topic, nor, in many situations, can it do so. *See Trump v. Hawaii*, 585 U.S. 667, 685-86 (2018) (rejecting as "questionable" plaintiffs' argument that a finding regarding "the interests of the United States" must be accompanied by a "persuasive rationale" explaining the finding "with sufficient detail to enable judicial review"); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010) (rejecting as "dangerous" an argument that national security and foreign policy concerns must be publicly stated with "'detail,' 'specific facts', and 'specific evidence,'" and recognizing that "[i]n this context, conclusions must often be based on informed judgment rather than concrete evidence, and that reality affects what we may reasonably insist on from the Government.").

Despite Plaintiff's blanket assertion that the Secretary's national security designation lacks sufficient detail, Plaintiff offers no statutory or precedential basis suggesting that there is specific, established criteria for making a national interest finding nor does Plaintiff engage into any analysis as to how the Secretary's determinations fail in light of that criteria. *See generally* ECF No. 102. Even if a finite level of detail were required—which it is not—the Secretary's national interest findings are still sufficient. In the case of Afghanistan, the Secretary based her national interest finding on several significant factors, among them the Administration's interest in ensuring that TPS designations are made and maintained consistent with the statute, public safety and national security concerns in the United States, and a desire to champion core American interests and put American interests first. Afghanistan AR at J. R. 118. In the case of Cameroon, the Secretary based her national interest finding on consultation from other agencies and the Administration's stated public safety and national security interests which necessarily demand that TPS designations be made consistent with the statute and properly limited in scope. Cameroon AR at 2. Here, where the national interest naturally encompasses broad economic, national security, and foreign relations considerations, and where there is no statutory mandate requiring specific

factual findings, Plaintiff fails to state a claim by attempting to second-guess and undermine the Secretary's determinations concerning the national interest.

### III. PLAINTIFF'S EQUAL PROTECTION CLAIMS ATTEMPT TO END-RUN THE JURISDICTIONAL BAR.

At base, Plaintiff's challenge is an attempt to skirt the jurisdictional bar prohibiting judicial review of the Secretary's TPS determinations, and the Court should reject this attempt to end-run the broad bar on judicial review that Congress enacted to limit courts' authority over such challenges. Plaintiff's claims rest on its critique of the substance of the Secretary's decision-making. Pl. Opp. at 15. The fact that Plaintiff has continued to seek relief in the form of extension of the TPS designations for both countries rather than an order that the agency make new "compliant" determinations only bolsters that conclusion. *See* ECF No. 1 at 32 (seeking extension of TPS for both countries); ECF No. 2-1 at 33 (seeking declaration that "each country's designation is extended by at least six months from the date of the prior extension"); ECF No. 41 at 38 (same); ECF No. 42 at 30 (same); ECF No. 58 at 25 (same). So too does Plaintiff's argument that this Court's analysis under the APA governs the Court's analysis of its EPC claim.

In sum, Plaintiff's claim to pressing only a collateral challenge to the Secretary's decisions, not to their substance, cannot be squared with the reality of Plaintiff's requests for relief and argument that the evidence must be reweighed—the very action that this Court recognized is prohibited by 8 U.S.C. § 1254a(b)(5)(A). *See* ECF No. 76 at 17 (finding the statutory bar applicable to "the act of authorizing, extending, or terminating TPS for a particular foreign state."). Plaintiff has not plausibly alleged genuinely collateral claims because what Plaintiff truly seeks— an outcome that demands that the evidence the Secretary considered be reweighed—is barred by the TPS statute. This is judicially improper and flies in the face of jurisdictional bar that this Court already recognized.

## CONCLUSION

For the reasons set forth in Defendants' motion and this Reply, this Court should dismiss counts V and VIII of Plaintiff's supplemented First Amended Complaint for failure to state a claim on which relief can be granted.

Dated: September 3, 2025                              Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

WILLIAM H. WEILAND
Acting Assistant Director

ANNA L. DICHTER
Senior Litigation Counsel

LAUREN BRYANT
CATHERINE ROSS
ERIC SNYDERMAN
JEFFREY HARTMAN
SHELBY WADE
DANIEL CAPPELLETTI
ILANA KRAMER
RODOLFO SAENZ
Trial Attorneys

/s/ Amanda B. Saylor
AMANDA B. SAYLOR
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-6837
Amanda.B.Saylor@usdoj.gov

*Counsel for Defendants*