# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

CASA, INC.,

       *Plaintiff*,

    v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, & U.S.
DEPARTMENT OF HOMELAND
SECURITY,

       *Defendants*.

**Case No.** 8:25-cv-1484

**PLAINTIFF CASA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPLETE
THE ADMINISTRATIVE RECORD AND FOR EXTRA-RECORD DISCOVERY**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 1

    I.      CASA Is Entitled to Complete Administrative Records ............................ 1

    II.     CASA Is Entitled to Ordinary Civil Discovery on Its Equal
          Protection Claims ..................................................................................... 9

    III.    CASA Also Is Entitled to Extra-Record Discovery on Its APA
          Claims. .................................................................................................. 12

    A.    Extra-Record Discovery Is Justified Based on Evidence of Bad
         Faith and Improper Behavior. ................................................................. 13

    B.    Extra-Record Discovery Also Is Justified Based on the Bare
         Record Exception. .................................................................................. 13

CONCLUSION .......................................................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Wildlands v. Kempthorne*,
  530 F.3d 991 (D.C. Cir. 2008) ............................................................................................... 8

*Blue Mountains Biodiversity v. Jeffries*,
  99 F.4th 438 (9th Cir. 2024) .................................................................................................. 5

*Bolden v. Blue Cross & Blue Shield Ass'n*,
  848 F.2d 201 (D.C. Cir. 1988) ........................................................................................... 7–8

*Burlington Truck Lines v. United States*,
  371 U.S. 156 (1962) ............................................................................................................... 2

*Chiayu Chang v. USCIS*,
  254 F. Supp. 3d 160 (D.D.C. 2017) ..................................................................................... 10

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ..................................................................................................... 2, 6, 13

*City of Virginia Beach v. U.S. Dep't of Com.*,
  995 F.2d 1247 (4th Cir. 1993) ............................................................................................... 4

*Clinch Coal. v. U.S. Forest Serv.*,
  693 F. Supp. 3d 643 (W.D. Va. 2023) ................................................................................... 3

*Cook County v. Wolf*,
  461 F. Supp. 3d 779 (N.D. Ill. 2020) .............................................................................. 10, 12

*Ctr. for Biological Diversity v. Bernhardt*,
  No. CV 19-109, 2020 WL 1130365 (D. Mont. Mar. 9, 2020) ............................................... 4

*Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*,
  No. 20-cv-103, 2020 WL 5642287 (D.D.C. Sept. 22, 2020) .............................................. 7–8

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ............................................................................................................... 7

*Desert Survivors v. U.S. Dep't of the Interior*,
  231 F. Supp. 3d 368 (N.D. Cal. 2017) ............................................................................... 4–5

*DHS v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020) ................................................................................................................... 2

*Doe v. Tenenbaum*, 127 F. Supp. 3d 426
(D. Md. 2012) ................................................................................................ 7–8

*Empower Oversight Whistleblowers & Rsch. v. Nat'l Insts. of Health*,
122 F.4th 92 (4th Cir. 2024) ............................................................................. 4

*Env't Def. Fund, Inc. v. Costle*,
657 F.2d 275 (D.C. Cir. 1981) ......................................................................... 7

*EPA v. Mink*,
410 U.S. 73 (1973) ........................................................................................... 3

*FBI v. Abramson*,
456 U.S. 615 (1982) ......................................................................................... 3

*Lewis v. United States & U.S. Army Corps of Eng'rs*,
No. 18-cv-1838, 2019 WL 13115362 (E.D. La. Mar. 28, 2019) ................... 11

*Mayor & City Council of Baltimore v. Trump*,
429 F. Supp. 3d 128 (D. Md. 2019) .......................................................... 10–13

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........................................................................................... 2

*Nat'l TPS All. v. Noem* (*Nat'l TPS All. I*),
No. 25-cv-1766, 2025 WL 1276229 (N.D. Cal. May 2, 2025) ............ 10–11, 13

*Nat'l TPS All. v. Noem* (*Nat'l TPS All. II*),
No. 25-cv-5687, 2025 WL 2419266 (N.D. Cal. Aug. 21, 2025) ................. 9, 13

*N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*,
340 F. Supp. 3d 1112 (D.N.M. 2018) ............................................................ 11

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ...................................................................................... 3, 4

*Oceana, Inc. v. Ross*,
920 F.3d 855 (D.C. Cir. 2019) ......................................................................... 5

*Outdoor Amusement Bus. Ass'n v. DHS*,
No. 16-cv-1015, 2017 WL 3189446 (D. Md. July 27, 2017) ........................... 6

*Saget v. Trump*,
375 F. Supp. 3d 280 (E.D.N.Y. 2019) ........................................................... 13

*Solers, Inc. v. IRS*,
827 F.3d 323 (4th Cir. 2016) ........................................................................... 4

iii

*Thompson v. U.S. Dep't of Labor*,
   885 F.2d 551 (9th Cir. 1989) ........................................................................ 6

*Trump v. Hawaii*,
   585 U.S. 667 (2018)................................................................................. 11–12

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   592 U.S. 261 (2021)..................................................................................... 2, 4

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977)................................................................................. 10–11

**Statutes**

8 U.S.C. § 1254a(b)(1)..................................................................................... 4, 10

8 U.S.C. § 1254a(b)(3)..................................................................................... 4, 10

**INTRODUCTION**

Defendants' disclosures accompanying their opposition to Plaintiff CASA, Inc.'s Motion to Complete the Administrative Record and for Extra-Record Discovery, ECF No. 106, confirm CASA's position that documents were improperly omitted from the administrative records. Although Defendants continue to resist inclusion of those documents, their arguments fall flat.  In particular, their argument that publication of a statutorily mandated Federal Register notice renders predecisional all documents created as part of the decisionmaking process—including even decisional memoranda—is inconsistent with past practice, Defendants' production of other documents in this very case, and on-point case law.  Moreover, if accepted by this Court, Defendants' position would render toothless arbitrary-and-capricious review by allowing agencies to limit judicial review to post hoc rationalizations published with an eye toward litigation. Defendants' arguments opposing extra-record discovery—including their about-face concerning CASA's entitlement to ordinary civil discovery on their equal protection claims if they survive Defendants' pending motion to dismiss—are similarly unpersuasive.

**ARGUMENT**

**I.      CASA Is Entitled to Complete Administrative Records.**

Defendants have submitted declarations attesting that several of the categories of documents that CASA has identified as missing from the administrative record do not exist.  *See* ECF Nos. 106-1 and -2.  Even accepting those sworn representations as true, at this time, four issues remain in dispute: (1) whether the decisional memoranda must be included in unredacted form; (2) whether the records of clearance and approval and letters from members of Congress concerning the terminations are properly considered part of the administrative records; (3) whether Secretary of State Marco Rubio's letter recommending termination of Cameroon's TPS designation is part of the Cameroon administrative record notwithstanding that it issued after

1

Secretary Noem had determined to terminate that country's designation; and (4) whether the Department of State produced any updated country conditions reports in support of Secretary Rubio's recommendations to terminate Afghanistan's and Cameroon's TPS designations.

***Decisional memoranda.***     Defendants maintain that the deliberative process privilege applies to the decisional memoranda because "the Federal Register notices terminating TPS for each country are the documents that 'embody' and 'communicate[]' the agency's final decision and operative reasoning to the public."  Defs.' Opp'n 8-9, ECF No. 105 (alteration in original) (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021)).  But Defendants cite no authority whatsoever for their novel view that the decisional process culminates in the statutorily required publication of a notice to affected parties in the Federal Register, and thus all documents—even ones reflecting the decision and supporting rationale itself—are somehow "predecisional."  That position is inconsistent with the documents produced as part of the administrative records in past cases challenging TPS determinations and, indeed, with Defendants' approach to other documents in this very case.  *See, e.g.*, Afghanistan AR, J.R. 120–130, 142–184, ECF No. 59-3; Cameroon AR 14–60, ECF No. 70-3.  And such a capacious interpretation of the privilege would render toothless arbitrary-and-capricious review by allowing an agency to cure its failure to "examine the relevant data and articulate a satisfactory explanation for its action" that is "based on consideration of the relevant factors" with post hoc justifications published in the Federal Register.  *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971) (holding that "'post hoc' rationalizations" are "an inadequate basis for review" (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168–169 (1962))); *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (same).

2

But even if the publication of a Federal Register notice could somehow render a decisional memorandum predecisional, the deliberative process privilege "does not protect internal advisory communications when incorporated in a final agency decision." *FBI v. Abramson*, 456 U.S. 615, 630 (1982). That is because the privilege's purpose of "protecting the give-and-take of the decisional process" is not implicated "once an agency chooses expressly to adopt a particular text as its official view." *Id.*; *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975) (holding that "if an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by [the deliberative process privilege] in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage" of some other privilege); *Clinch Coal. v. U.S. Forest Serv.*, 693 F. Supp. 3d 643, 651 (W.D. Va. 2023) (stating that the deliberative process privilege does not apply "when an agency holds out that it agrees with the reasoning contained within a deliberative and predecisional document"). That principle applies with full force to the decisional memos here. The memos were prepared by the U.S. Citizenship and Immigration Services (USCIS) and, Defendants claim (Defs.' Opp'n 9), contain that subagency's recommendation concerning Afghanistan's and Cameroon's TPS designations. *But see* ECF No. 106-4 (Secretary Noem remarking on the "[o]dd[ity]" that the Cameroon memo contained "no recommendation from this team"). But Secretary Noem "adopt[ed]" the memos as her agency's "official view" with respect to each termination. *Abramson*, 456 U.S. at 630; *accord Sears*, 421 U.S. at 161. Defendants therefore cannot redact the decisional memos almost in their entirety based on the deliberative process privilege.

And no matter what, near-complete redaction of the decisional memoranda is not permissible under any circumstances. "[P]urely factual material contained in deliberative memoranda" must be disclosed when it is "severable from its context." *EPA v. Mink*, 410 U.S. 73,

3

87–88 (1973); *see also Empower Oversight Whistleblowers & Rsch. v. Nat'l Insts. of Health*, 122 F.4th 92, 105 (4th Cir. 2024) (stating that the deliberative process privilege "does not protect purely factual material unless it is so intertwined with pre-decisional, deliberative material that revelation of the factual material would expose the protected information"). That is so because "disclosure is less likely to make an advisor omit or fudge raw facts than opinions." *Solers, Inc. v. IRS*, 827 F.3d 323, 330 (4th Cir. 2016) (quoting *City of Virginia Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1253 (4th Cir. 1993)). The decisional memos here are sure to contain severable factual material: given the sorts of information included in past TPS decisional memos (*see* Pl.'s Mot., ECF No. 104, Exs. B–E)—as well as the information the Secretary is required by law to consider, 8 U.S.C. § 1254a(b)(1), (3)—it would reflect a major departure from past practice if the decisional memos here lacked such factual information. Thus, at the very least, Defendants must produce decisional memos with unredacted factual information.[1]

For the aforementioned reasons, the deliberative process privilege does not apply to the decisional memoranda. But even if it did, some courts have held that "pre-decisional deliberative communications" are part of the administrative record when they "go to the heart of the question of whether an agency action was arbitrary and capricious, an abuse of discretion or otherwise inconsistent with the law under Section 706(2) of the APA." *Desert Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 382, 386 (N.D. Cal. 2017); *see also Ctr. for Biological Diversity v. Bernhardt*, No. CV 19-109, 2020 WL 1130365, at *3 (D. Mont. Mar. 9, 2020) ("[D]eliberative documents are not categorically excluded from the administrative record."). To be sure, the

---

[1] Defendants' core assertion of privilege appears to pertain to "possible, unimplemented options" outlined in the decisional memoranda, not recommendations. ECF No. 106-8. Indeed, the Cameroon decisional memo apparently contained "no recommendation" whatsoever. ECF No. 106-4. But alternative options are not "recommendations" that are subject to the deliberative process privilege. *U.S. Fish & Wildlife Serv.*, 592 U.S. at 267 (quoting *Sears*, 421 U.S. at 150).

majority view among courts is that "deliberative materials are *generally* not part of the AR absent impropriety or bad faith by the agency." *Blue Mountains Biodiversity v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024) (emphasis added); *see also Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (holding that although predecisional deliberative materials are generally properly withheld from the administrative record, "further inquiry by the District Court" is necessary where "a substantial showing [is] made that the record [is] incomplete" (cleaned up)).  But no document could be more central to arbitrary-and-capricious review than the decisional memo.  Although an agency might properly withhold collateral predecisional deliberative materials from an administrative record, that principle cannot shield the core documents essential for arbitrary-and-capricious review.  That is especially so where, as here, other information in the administrative records, such as the references to "limited time constraints" in the addenda to the USCIS country conditions reports (Afghanistan AR, J.R. 143; *accord* Cameroon AR 45), suggests that the memos might contain a "smoking gun," namely "statements that the decision had already been made . . . that the staff . . . needed to come up with ways to defend." *Desert Survivors*, 231 F. Supp. 3d at 382; *see also Oceana, Inc.*, 920 F.3d at 865 (stating that predecisional deliberative materials might be considered part of the administrative record upon "a showing of bad faith or improper behavior").

*Records of clearance and approval and letters from members of Congress.*  As Defendants' recent disclosures confirm, records of clearance and approval do exist for the Afghanistan and Cameroon termination decisions (ECF Nos. 106-3 and -4), as does correspondence from members of Congress that was before Secretary Noem when she made those determinations (ECF Nos. 106-5 and -6).  Defendants do not claim that any privilege applies to

those documents. *See* Defs.' Opp'n 10–11; ECF No. 106-8. Yet they maintain that these documents are not part of the administrative records. Defendants are wrong.

Regarding the records of clearance, Defendants argue that those documents "merely memorialize the decisions made" and therefore were not "before the Secretary at the time the decisions were made" or "relied upon in making her decisions." Defs.' Opp'n 10. Not so. Secretary Noem's signatures on the Afghanistan and Cameroon termination memos are dated March 21, 2025, and April 7, 2025, respectively. Afghanistan AR, J.R. 140–141; Cameroon AR 11. Each clearance record contains signatures dated on or before those dates. *See* ECF Nos. 106-3 and -4. The clearance records were therefore "before" Secretary Noem when she made her decisions. *Overton Park*, 401 U.S. at 420. Secretary Noem also "directly or indirectly" relied on the fact that her subordinates had approved the proposed agency actions in rendering a final decision, *Outdoor Amusement Bus. Ass'n v. DHS*, No. 16-cv-1015, 2017 WL 3189446, at *7 (D. Md. July 27, 2017) (emphasis omitted) (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)), as demonstrated by her note on the Cameroon clearance record referencing a missing recommendation from the relevant "team" (ECF No. 106-4). Accordingly, the clearance records are part of the administrative record.

Defendants' only argument against inclusion of the letters from members of Congress is that "the TPS statute does not specify the entities with which the Secretary must consult" and that CASA therefore "cannot demand additional documentation prepared by individuals or entities outside of Defendants' control based solely on their belief that such documents should have been considered." Defs.' Opp'n 11–12. That rationale has no relevance here. Even if Secretary Noem was not *required* to consult members of Congress before terminating Afghanistan's or Cameroon's

TPS designations, she received letters from such officials on or before the dates that she made the determinations. They are thus part of the administrative records.

*Secretary Rubio's post-decisional letter regarding Cameroon termination.* Secretary of State Marco Rubio submitted a letter to Secretary Noem recommending termination of Cameroon's TPS designation, but not until April 8, 2025 (ECF No. 106-7), the day after Secretary Noem apparently signed the Cameroon termination memo (Cameroon AR 11). Although judicial review in an APA case is ordinarily limited to the administrative record, *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019), supplementation of the record is warranted where additional content "illuminates" matters "obscured but implicit" in the record. *Bolden v. Blue Cross & Blue Shield Ass'n*, 848 F.2d 201, 207 (D.C. Cir. 1988); *see also Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) (finding supplementation of the administrative record permissible where "new materials [are] merely explanatory of the original record and . . . contain no new rationalizations"). In *Bolden*, for example, the D.C. Circuit held that a district court "correctly considered" a post-decisional memorandum that "amplif[ied]" the reasons that an agency had considered in its decisionmaking process. 848 F.2d at 207.

Supplementation also is warranted to provide "background information in order to determine whether the agency considered all of the relevant factors." *Doe v. Tenenbaum*, 127 F. Supp. 3d 426, 454 (D. Md. 2012) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). In *Doe*, for example, a court in this district "treat[ed]" a Government Accountability Office report as "part of the administrative record" as a matter of "thoroughness and fundamental fairness" because it revealed "inconsistency between" the agency's conduct at issue "and its prior conduct" that the agency failed to explain. *Id.*; *see also Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, No. 20-cv-103, 2020 WL 5642287, at *12–14 (D.D.C.

7

Sept. 22, 2020) (allowing supplementation of an administrative record with a post-decision report for the purpose of determining "whether the agency committed a procedural misstep resulting in the agency's failure to consider an important factor").

The absence of any letter from Secretary Rubio in the Cameroon administrative record "impli[es]" that Secretary Noem decided to terminate that country's TPS designation without having received any recommendation from the State Department to that effect. *Bolden*, 848 F.2d at 207. But Secretary Rubio's post-decisional letter "illuminates" and "amplif[ies]" that fact. *Id.* That Secretary Noem acted without any supporting recommendation from State also is important "background information," *Doe*, 127 F. Supp. 3d at 454 (quoting *Am. Wildlands*, 530 F.3d at 1002), that points to a "procedural misstep" on her part, *Ctr. for Biological Diversity*, 2020 WL 5642287, at *14. Supplementation is not improper merely because "[t]he TPS statute does not explicitly require consultation with the State Department." Defs.' Opp'n 10. State Department recommendations are a standard feature of TPS determinations (Pl.'s Mot. Ex. A, at 18 & n.34), as demonstrated by Defendants' production of such letters as part of the administrative records in this very case (Afghanistan AR, J.R. 120–121, 129–130; Cameroon AR 49–50). Indeed, "thoroughness and fundamental fairness" dictate that Secretary Rubio's post-decisional letter should be considered alongside the similar letters already in the records. *Doe*, 127 F. Supp. 3d at 454.

**State Department updated country condition reports.** Defendants contend that "there is no factual basis" for CASA's informed view that the State Department would have prepared updated country conditions reports to accompany Secretary Rubio's letters recommending termination of Afghanistan's and Cameroon's TPS designations. Defs.' Opp'n 11. Conspicuously, however, Defendants' declarants do not attest that such reports are nonexistent.

*See* ECF Nos. 106-1 and -2.  And there is nothing fanciful about CASA's inference that such reports exist, as they are another standard feature of TPS determinations (Pl.'s Mot. Ex. A, at 18 & n.34) and accompanied former Secretary of State Antony Blinken's letters recommending extension of Afghanistan's and Cameroon's TPS designations (Afghanistan AR, J.R. 122–128; Cameroon AR 51–58).  In accordance with this Court's July 29, 2025, order, ECF No. 98, Defendants must either produce these documents or provide an affidavit from an appropriate official attesting that such documents do not exist.[2]

## II.    CASA Is Entitled to Ordinary Civil Discovery on Its Equal Protection Claims.

Separate and apart from the aforementioned documents, CASA also is entitled to ordinary civil discovery on its equal protection claims if they survive Defendants' pending motion to dismiss (ECF No. 99).  Defendants unpersuasively attempt to walk back their concession that CASA is entitled to such discovery if the Court denies Defendants' motion.

This Court pointedly asked whether defense counsel "agree[d] that th[e] standard for . . . bad faith et cetera doesn't apply *to Counts 5 and 8*," CASA's equal protection claims, if those counts survive Defendants' motion to dismiss, and counsel "agree[d] with that conclusion."  Pl.'s Mot. Ex. H, at 21:6–15 (emphasis added).  It blinks reality to suggest, as Defendants now do, that counsel was speaking "theoretically" about a "hypothetical" case involving an equal protection claim and no APA claims when agreeing with that proposition.  Defs.' Opp'n 14.  Indeed, Defendants' original concession was proper: the great weight of authority permits discovery under such circumstances.  *See, e.g.*, *Nat'l TPS All. v. Noem* (*Nat'l TPS All. II*), No. 25-cv-5687, 2025 WL 2419266, at *2 (N.D. Cal. Aug. 21, 2025) (granting discovery on equal protection claim in

---

[2] To the extent that such country conditions reports exist but post-date Secretary Noem's termination decisions, this Court should order supplementation of the administrative records with those documents for the same reasons that it should do so with regard to Secretary Rubio's post-decisional letter recommending termination of Cameroon's TPS designation.  *See* pp. 7–8, *supra*.

case challenging Honduras, Nicaragua, and Nepal TPS terminations, and noting that courts in the Ninth Circuit "typically permit discovery on constitutional claims where they diverge in some meaningful way from the APA claims"); *Nat'l TPS All. v. Noem* (*Nat'l TPS All. I*), No. 25-cv-1766, 2025 WL 1276229, at *3–4 (N.D. Cal. May 2, 2025) (similar for case challenging Venezuela and Haiti TPS determinations); *see also Cook County v. Wolf*, 461 F. Supp. 3d 779, 795 (N.D. Ill. 2020); *Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 140 (D. Md. 2019).

The cases that Defendants cite in support of their newfound position are distinguishable. CASA's equal protection claims are distinct from its APA claims.  The gravamen of CASA's arbitrary-and-capricious claims is that Secretary Noem based her decisions to terminate Afghanistan's and Cameroon's TPS terminations not on the mandatory statutory factors concerning country conditions, 8 U.S.C. § 1254a(b)(1), (3), but instead as part of a "general policy or practice of terminating TPS designations on a preordained basis."  Op. 40.  To be sure, evidence that such a policy or practice was part of "a broader effort to reduce the number of non-white immigrants in the United States" supports those claims by furnishing a reason for Defendants' conduct.  *Id.*  But such evidence ultimately is not essential to CASA's APA claims.  CASA's equal protection claims, on the other hand, squarely allege that the terminations were "motivated at least in part by the Trump Administration's discriminatory intent."  Am. Compl. ¶ 131, ECF No. 41; Suppl. Am. Compl. ¶ 19, ECF No. 55.  Those claims depend on direct or circumstantial evidence of discriminatory intent.  *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Defendants rely (Defs.' Opp'n 14) on *Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160 (D.D.C. 2017).  But in contrast to CASA's claims here, the *Chiayu Chang* court denied discovery where the plaintiffs' constitutional claims were "fundamentally similar to their APA claims." *Id.* at 162;

10

*cf. Nat'l TPS All. I*, 2025 WL 1276229, at *4 (noting that "although there is overlap between the [plaintiffs'] bad faith argument under the APA and the equal protection constitutional claim," there was no "fundamental overlap" with their "more conventional APA arguments" (cleaned up)).  And in *Lewis v. United States & U.S. Army Corps of Engineers*, No. 18-cv-1838, 2019 WL 13115362 (E.D. La. Mar. 28, 2019), which Defendants also cite, the court did not categorically hold that discovery is unavailable in cases with both APA and constitutional claims, only that courts must "carefully consider whether such discovery would lead to legally relevant evidence."  *Id.* at *6. The court found that prospect unlikely in *Lewis* because the constitutional claims raised "only legal issues."  *Id.*  That logic does not apply to CASA's equal protection claims, given the fact-intensive and "sensitive inquiry" necessary to evaluate whether discriminatory intent motivated government action. *Arlington Heights*, 429 U.S. at 266.  And—contrary to Defendants' suggestion—*Baltimore* held that "equal protection principles, *not the APA*, suppl[ied] the governing legal framework for assessing whether plaintiff is entitled to discovery."  429 F. Supp. 3d at 141 (emphasis added). The court also found that in the "few cases involving equal protection claims" in which courts have denied extra-record discovery—unlike this case—involved no allegations of suspect classification.  *Id.* at 140–141.  Finally, as far as CASA can discern, *New Mexico Health Connections v. U.S. Department of Health & Human Services*, 340 F. Supp. 3d 1112 (D.N.M. 2018), contains no analysis relevant to this issue.

In further discussing *Baltimore* in the context of CASA's request for extra-record discovery on their APA claims, Defendants also suggest that the court's denial of discovery supports their position here.  Defs.' Opp'n 21–24.  That is wrong.  The district court ultimately denied discovery in *Baltimore* because it concluded that rational basis review applied to the plaintiff's equal protection claim based on application of *Trump v. Hawaii*, 585 U.S. 667 (2018), and other cases

11

involving the *admission* of noncitizens. *Baltimore*, 429 F. Supp. 3d at 141–142 ("[T]raditional equal protection analysis does not apply to actions pertaining to the entry of foreign nationals."). Having determined that rational basis was the applicable standard, the court determined that the administrative record was adequate to conduct that analysis. *Id.* at 143–144. That is because under such a deferential standard of review, the agency's action would have been upheld unless the record lacked any "legitimate grounding" whatsoever for the decision made. *Id.* at 143 (quoting *Hawaii*, 585 U.S. at 706).

But as CASA has argued in opposing Defendants' pending motion to dismiss, *Hawaii* and the other cases on which *Baltimore* relied do not apply to CASA's claims, which concern the termination of an immigration benefit for noncitizens who are already present in the United States, rather than the admission of noncitizens into this country. Pl.'s Opp'n to Defs' Mot. to Dismiss 5–7, ECF No. 102. Because *Arlington Heights*'s fact-intensive standard applies to CASA's equal protection claims, the administrative record alone cannot suffice to resolve them, as *Baltimore* stressed. 429 F. Supp. 3d at 140 ("[E]valuating whether an official act was motivated by animus cannot be determined solely by examining the administrative record."); *see also Cook County*, 461 F. Supp. 3d at 795 ("[B]ecause evidence of racial animus (if any) will reside outside the administrative record, presumptively limiting discovery to the record can allow the racial motivations underlying racially motivated policymaking to remain concealed.").

## III. CASA Also Is Entitled to Extra-Record Discovery on Its APA Claims.

In addition to discovery on its equal protection claims, CASA also is entitled to extra-record discovery on its APA claims. Defendants' arguments to the contrary are not persuasive.

12

## A.    Extra-Record Discovery Is Justified Based on Evidence of Bad Faith and Improper Behavior.

Defendants dismiss CASA's evidence of bad faith and improper behavior in the form of racially motivated preordained decisionmaking as "[m]ere allegations of bad faith" and as "speculation." Defs.' Opp'n 15, 17–18. Defendants' arguments ignore that this Court deemed the evidence highlighted by CASA sufficient not only to state a claim that Secretary Noem terminated Afghanistan's and Cameroon's TPS designations based on "a general policy or practice of terminating TPS designations on a preordained basis as part of a broader effort to reduce the number of non-white immigrants in the United States," but also to survive summary judgment. Op. 40, 46–48. Indeed, this Court found that "the facts from the administrative record . . . only bolster[]" CASA's arguments. *Id.* at 47. Evidence of racial animus and preordained decisionmaking that is sufficient to survive summary judgment is more than adequate to meet *Overton Park*'s standard for extra-record discovery. 401 U.S. at 420. And, indeed, other courts have found the same sort of evidence sufficient to justify extra-record discovery under the "bad faith" exception. *Nat'l TPS All. II*, 2025 WL 2419266, at *2; *Nat'l TPS All. I*, 2025 WL 1276229, at *3; *Saget v. Trump*, 375 F. Supp. 3d 280, 343–344 (E.D.N.Y. 2019).

## B.    Extra-Record Discovery Also Is Justified Based on the Bare Record Exception.

CASA also contends that *Overton Park*'s "bare record" exception, 401 U.S. at 420, applies here because its arbitrary-and-capricious claims concern "a general policy or practice" that is not limited to the Afghanistan and Cameroon TPS terminations. Pl.'s Mot. 19. Defendants largely fail to respond to that argument and instead contend that *Baltimore* resolved "this very issue." Defs.' Opp'n 21. But *Baltimore* did not concern the "bare record" exception specifically or even extra-record discovery generally. 429 F. Supp. 3d at 136 (noting that the plaintiff "has not sought extra-record discovery on its APA claims"). Instead, as discussed, *see* pp. 11–12, *supra*, *Baltimore*

13

addressed whether the plaintiff could take discovery on an equal protection claim. CASA is entitled to extra-record discovery because the Afghanistan and Cameroon administrative records provide only a partial window into the broader policy or practice that CASA's APA claim challenges. Nothing in *Baltimore* is contrary to that position, and Defendants offer no other response on this point.

**CONCLUSION**

For all the foregoing reasons, CASA respectfully requests that this Court order Defendants to complete the administrative record with the categories of documents enumerated above and authorize ordinary civil discovery on its equal protection claims, as well as extra-record discovery on its APA claims.

September 3, 2025

Respectfully submitted,

_____/s/_____

Ryan C. Downer*
Sarah L. Bessell (D. Md. 30969)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
700 14th St. #400
Washington, D.C. 20005
Tel. (202) 319-1000
Fax (202) 319-1010
Ryan_downer@washlaw.org
sarah_bessell@washlaw.org

Jonathan L. Backer (D. Md. 20000)
Rupa Bhattacharyya*
Julia Gegenheimer*
Joseph W. Mead (D. Md. 22335)
Mary B. McCord (D. Md. 21998)
Samuel P. Siegel*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
  AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 661-6671
Fax: (202) 661-6730
jb2845@georgetown.edu
jg1370@georgetown.edu
jm3468@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
ss5427@georgetown.edu

*Attorneys for Plaintiff CASA, Inc.*

*Admitted pro hac vice.*

15