*Institute for*
**Constitutional Advocacy and Protection**
GEORGETOWN LAW

March 30, 2026

**VIA CM/ECF**
Judge Theodore D. Chuang
U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 245
Greenbelt, MD 20770

**Re: Notice of Intent to File Motion to Compel**

Dear Judge Chuang,

Plaintiff CASA, Inc., requests permission to file a motion to compel production of documents and answers to its interrogatories. CASA served its First Set of Requests for Production of Documents (First RFPs) and First Set of Interrogatories (First ROGs) on February 3, 2026. First RFPs, Ex. A; First ROGs, Ex. B. Defendants responded on March 5, 2026, without producing a single document or answering a single interrogatory. RFP Resps. Ex. C; March 5 ROG Resps., Ex. D. On March 20, 2026, Defendants served glaringly deficient answers to a subset of interrogatories, March 20 ROG Resps., Ex. E, but still have not produced any documents.

CASA sent two letters setting forth the extensive deficiencies in Defendants' discovery responses and making some compromises in an effort to narrow the issues in dispute. March 19 Deficiency Ltr., Ex. F; March 25 Deficiency Ltr., Ex. G. The parties met and conferred about these issues on March 29, 2026. Defendants refused to explain their positions beyond what they had already stated in their discovery responses or to discuss any potential compromises to advance discovery without this Court's intervention. March 28 Email, Ex. H.

The deficiencies in Defendants' discovery responses are too numerous to set forth in a three-page letter. But three major issues on which the parties are at impasse preclude further progress on discovery: (1) the subject-matter scope of discovery; (2) the temporal scope of discovery; and (3) Defendants' repeated assertions of deliberative process privilege. CASA requests permission to file a motion to compel production of documents and interrogatory answers withheld on these bases.

**Subject-Matter Scope of Discovery.** Defendants object to several of CASA's RFPs and ROGs as outside the scope of discovery. Defendants contend that the scope of discovery should be limited to the topics that they argue this Court identified as necessary for a "complete" review of CASA's Administrative Procedure Act (APA) claims. ECF No. 122, at 35–36. That order expressly mentioned "Secretary Noem's TPS determinations for other countries [besides Afghanistan and Cameroon], DHS's implementation of Executive Orders 14,150 and 14,159, and the admission of Afrikaners from South Africa through the United States Refugee Admissions Program." *Id.*

But even if Defendants' preferred subject-matter scope governed, they outright refuse to produce documents or answer interrogatories on several of those topics. *See* RFP Resp. No. 7 (refusing to produce documents or communications related to answering media inquiries or beneficiary questions about TPS terminations); RFP Resp. No. 14 (refusing to produce any documents concerning the resettlement of Afrikaner refugees); March 5 ROG Resp. Nos. 10–12 (refusing to identify administrative investigations for fraud, public safety, or national security concerning TPS

600 New Jersey Avenue NW, Washington, D.C. 20001 | (202) 662-9042 | reachICAP@georgetown.edu

beneficiaries from Afghanistan, even though the Afghanistan notice expressly references such investigations as a basis for termination, 90 Fed. Reg. 20309, 20311 (May 13, 2025)). Defendants also object to CASA's requests on the topics that they concede are within the subject-matter scope of discovery on overbreadth, burden, or related grounds. RFP Resp. Nos. 1–5 & March 5 ROG Resp. No. 15 (objecting to discovery concerning TPS determinations besides the Afghanistan and Cameroon terminations as "unrelated" to the Afghanistan and Cameroon terminations); RFP Resp. No. 6 (same with regard to any effort to end or limit TPS as a program or form of immigration relief); RFP Resp. Nos. 11–12 & March 5 ROG Resp. Nos. 1–4 (same with regard to discovery concerning Executive Orders 14,150 and 14,159).

As for other topics such as Defendants' termination of the CHNV parole program, the large-scale termination of SEVIS records, and the creation of a "Gold Card" program, this Court's specific mention of other topics was not intended to preclude discovery concerning the aforementioned topics. *See* RFP Resp. Nos. 8–10, 15; March 5 ROG Resp. Nos. 6, 9, 16–17, 22. First, CASA's motion for extra-record discovery identified other TPS determinations, Executive Orders 14,150 and 14,159, and the admission of Afrikaners through USRAP as illustrative examples of topics on which discovery would be necessary for "complete" review of its APA claims. ECF No. 104, at 19–20 (mentioning the topics by way of "example"). The Court properly understood the list as nonexhaustive. ECF No. 122, at 36 (granting extra-record discovery concerning "DHS's other TPS determinations *and the other related actions referenced by CASA*." (emphasis added)). Second, in addition to authorizing extra-record discovery on CASA's APA claims, this Court authorized ordinary civil discovery on CASA's equal-protection claims. ECF No. 122, at 39. Nothing in the Court's opinion suggests that the scope of discovery on CASA's equal-protection claims is limited to the topics it mentioned as necessary for "complete" review of CASA's APA claims.

Defendants also object to discovery concerning Executive Order 14,163, 90 Fed. Reg. 8459 (Jan. 20, 2025), as outside the scope of discovery. *See* RFP Resp. No. 13; March 5 ROG Resp. Nos. 5, 7–8, 20. But public reporting on the implementation of that Order that postdates CASA's filings in this case indicates that DHS has made recommendations to rework USRAP in ways that would favor white noncitizens. Zolan Kanno-Youngs & Hamed Aleaziz, *Trump Considers Overhaul of Refugee System that Would Favor White People*, N.Y. Times (Oct. 15, 2025), https://tinyurl.com/2yb6tznd. If that reporting is accurate, discovery concerning such recommendations would be highly relevant to CASA's claims.

**Temporal Scope of Discovery.** Defendants also object to the temporal scope of CASA's requests, which, unless otherwise specified, is from January 20, 2025, until the present.[1] This corresponds to the period during which Secretary Noem has terminated every TPS designation that has faced expiration during her tenure, as well as vacating countries' TPS designations that had been extended under the prior Administration. Accordingly, this is the relevant period to assess whether Defendants have a general policy or practice of terminating TPS designations on a preordained basis as part of a broader effort to reduce the number of nonwhite immigrants in the United States.

Defendants instead self-impose an alternative temporal scope of March 21, 2025 (the date on which Secretary Noem decided to terminate Afghanistan's TPS designation), and June 4, 2025 (the

---

[1] In the interest of compromise, CASA has agreed to limit discovery concerning other TPS determinations besides the Afghanistan and Cameroon terminations to those made between January 20, 2025, and the date CASA served its first discovery requests, February 3, 2026.

date on which notice of Cameroon's termination appeared in the Federal Register). That temporal scope would preclude discovery concerning TPS determinations, other than Afghanistan and Cameroon, that this Court deemed essential to evaluating CASA's claims. ECF No. 122, at 35–36. Worse, it would preclude discovery of the entire decisionmaking process leading up to the Afghanistan termination. *See* ECF No. 104-1 ("USCIS generally starts the review process for an existing TPS designation about 6 months to a year before the end date of the country's current designation."). Defendants' proposed temporal scope is thus at odds with even their own unjustifiably narrow conception of the proper subject-matter scope of discovery.

**Deliberative Process Privilege.** Defendants' discovery responses repeatedly invoke the deliberative privilege among several others. Although many such invocations amount to impermissible boilerplate objections, CASA acknowledges that some of its requests expressly call for production of deliberative materials. For example, RFP No. 2 calls for production of "[d]raft . . . decisional memoranda" that fall squarely within the deliberative process privilege. "Courts have made clear," however, "that the privilege does not apply in certain circumstances" such as "where 'the plaintiff's cause of action is directed at the government's intent.'" *Estate of LeRoux v. Montgomery Cnty.*, No. 8:22-cv-856, 2024 WL 1703939, at *4 (D. Md. Apr. 19, 2024) (quoting *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998)); *see also Stone v. Trump*, 356 F. Supp. 3d 505, 515 (D. Md. 2018). Where, as here, the government's intent is directly at issue in a case, "it makes no sense to permit the government to use the privilege as a shield." *Id.* Under such circumstances, "the privilege's raison d'être evaporates."

The government's intent is the whole ballgame in this case. The question presented by both CASA's APA claims and its equal-protection claims is whether Secretary Noem terminated Afghanistan's and Cameroon's TPS designations for the reasons stated in the termination notices or based on a general policy or practice of terminating TPS designations on a preordained basis as part of a broader effort to reduce the number of nonwhite immigrants in the United States. And CASA's equal-protection claim depends on "a sensitive inquiry into such circumstantial and direct evidence of intent that may be available." *Vill. of Arlington Heights v. Metro. Dev. Hous. Corp.*, 429 U.S. at 266. When it comes to "a constitutional claim for discrimination" like those claims, it is "rather obvious" that the deliberative process privilege "has no place." *In re Subpoena*, 145 F.3d at 1424.

And even if the deliberative process privilege applied in this case, Defendants invoke it to preclude discovery of purely factual information, *see* March 5 ROG Resp. No. 6 (raw numbers of terminated SEVIS records, broken down by country of origin); March 5 ROG Resp. No. 9 (raw numbers of "Gold Card" applicants, broken down by country of origin); March 5 ROG Resp. Nos. 10–12 (identification of administrative investigations for fraud, public safety, or national security concerning TPS beneficiaries from Afghanistan),[2] and documents that are neither predecisional nor deliberative, *see* RFP Resp. No. 2 (decisional memoranda for TPS terminations besides Afghanistan and Cameroon terminations); RFP Resp. No. 7 (documents and communications concerning how to respond to media and TPS beneficiary questions).

Accordingly, this Court should permit CASA to file a motion to compel production of documents and interrogatory answers withheld on the ground that they seek information that is outside the scope of discovery or that is covered by the deliberative process privilege.

---

[2] Defendants similarly invoke the law enforcement privilege to shield disclosure of this purely factual information. *See* March 5 ROG Resps. 6, 9–12.

Sincerely,


_____/s/_____
Jonathan L. Backer
Senior Counsel
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
Phone: (202) 661-6671
jb2845@georgetown.edu